**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 30 2009 ★

**BROOKLYN OFFICE**

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli (JAF 9058)
Brian S. Schaffer (BSS 7548)
1250 Broadway, Suite 3701
New York, New York 10001
Telephone: (212)300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

SLOBODAN KARIC, CLARIBEL GARCIA, STEVEN JONES, GORAN STANIC, LJUBOMIR ZIVANOVIC, DANIEL COLON, and WILLIAM CHATMAN, on behalf of themselves and all others similarly situated,

**Plaintiffs,**

-against-

THE MAJOR AUTOMOTIVE COMPANIES, INC, MAJOR UNIVERSE, INC., MAJOR UNIVERSE, INC. d/b/a MAJOR WORLD FORD LINCOLN MERCURY, MAJOR CHEVROLET GEO, MAJOR CHEVROLET, INC, MAJOR CHRYSLER JEEP DODGE, INC., MAJOR MOTORS OF LONG ISLAND CITY, INC. d/b/a MAJOR KIA, MAJOR MOTORS OF THE FIVE TOWNS, INC., MAJOR AUTOMOTIVE REALTY CORP., HAROLD BENDELL, BRUCE BENDELL, and CHRIS ORSARIS, individually,

**Defendants.**

**CLASS ACTION COMPLAINT**

**09 5708**

VITALIANO, J.

POLLAK, M.J

Plaintiffs Slobodan Karic, Claribel Garcia, Steven Jones, Goran Stanic, Ljubomir Zivanovic, Daniel Colon, and William Chatman (collectively "Plaintiffs"), individually and on behalf of all others similarly situated as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      The Major Automotive Companies, Inc., Major Universe, Inc., Major Universe, Inc. d/b/a Major Ford Lincoln Mercury, Major Chevrolet GEO, Major Chevrolet, Inc., Major Chrysler Jeep Dodge, Inc., Major Motors of Long Island City, Inc. d/b/a Major Kia, Major Motors of the Five Towns, Inc., Major Automotive Realty Corp., Bruce Bendell, Harold Bendell, and Chris Orsaris (collectively "Major World") is one of the largest new and used car dealerships in the country.

2.      Bruce Bendell and his brother Harold Bendell began operating a Brooklyn carwash and auto repair shop in 1972.  Subsequently they sold used cars and leased new cars in Brooklyn before purchasing Major Chevrolet, a Long Island City distributor, in 1985.  By 1990 sales had increased tenfold.  In 1996 Bendell's Major Automotive Group was doing about $180 million a year in business.

3.      Now, Major World is one of New York's largest auto dealerships, consisting of nine automobile retailers in the New York City Metropolitan Area, including Major Chevrolet/Geo, Major Dodge, Major Chrysler, Plymouth, Jeep Eagle, Major Kia, Major Nissan and Major Subaru.  Major World also operates Major Fleet and Leasing, the leading supplier of taxis and police cars in New York, is a lessor of trucks, and distributes General Motors vehicles in the former Soviet Union.  In addition to selling vehicles, Major World also sells replacement parts and provides repair service and maintenance.

4.      The company also has in house financing operations, whereby it brokers financing contracts and directly finances leases and sales.

5.      Upon information and belief, Major World employs at least 500 people, over 150 of which are car salespersons, known as sales representatives.

- 2 -

6.      Upon information and belief, in 2004, Major World accumulated total revenues of approximately $397 million, and, in the trailing 12 months, the company has shown revenues of approximately $471 million.  Additionally, it has been reported that Major World's Chairman, President, CEO and CFO, Bruce Bendell, earned over $886,000.00 in 2009.

7.      Major World's success, however, has come at the expense of its commissioned sales representatives, from whom it has failed to pay commissions, minimum wage and agreed upon wages.

8.      Major World sales representatives are paid pursuant to a commission agreement plus a shift pay of $20.00 per day.  However, when a sales representative did not earn any commissions in a given pay period, Major World would only pay that sales representative the $20.00 per day shift pay, regardless of how many hours he or she worked, which amounts to less than minimum wage.  Further, when commissions were earned, payments to sales representatives were often inexplicably delayed for months at a time.

9.      Pursuant to the commission agreement between Major World and its sales representatives, it was agreed that sales representatives would receive a twenty (20) percent commission on the gross profit from the "front end" of a sale.  Additionally, new car sales representatives were further promised a ten (10) percent commission of the profit on the "back end[1]" of a new car sale.  It was also agreed that sales representatives would be paid $100.00 on used car deals with a loss and $50.00 on new car deals with a loss.

10.     Notwithstanding its agreement with the sales representatives, Major World designed and implemented an ongoing scheme whereby it manipulated the gross profits of cars sold, underreported income, self-dealt, and falsified documents and sales records, thereby reducing its sales representatives' commissions and increasing its own profits.

---

[1] Generally referring to the sale of extended warranties, service contracts and accessories.

11.     Under the direction and control of President, CEO, COO and CFO Bruce Bendell, Senior Executive Harold Bendell, and General Manager Chris Orsaris, the manipulation of the gross profits and falsification of documents and sales records often took place after deals were closed and customers were invoiced. Moreover, "back end" items were frequently not shown on final customer invoices.

12.     Commissions owed on used cars were illegally reduced by the imposition of chargebacks used to reduce the gross profits on the "front end," including, but not limited to: unexplained charges, auction fees, reduction of agreed upon value of trade-ins, VIN etching, stock fees, extended warranties, and after market accessories. The reduction of commissions by the imposition of these chargebacks was not agreed upon in writing with the sales representatives, in violation of the New York Labor Law ("NYLL").

13.     Commissions owed on new cars were also illegally reduced by the imposition of chargebacks used to reduce the "front end," including, but not limited to: manufacturers' holdbacks, VIN etching, service contracts, extended warranties, and after market accessories. The reduction of commissions by the imposition of these chargebacks was not agreed upon in writing with the sales representatives, in violation of the NYLL.

14.     Upon information and belief, many of the chargebacks were billed through sham subsidiary companies owned and operated by the Defendants, including, but not limited to: TLP, DMSC and Accelerated Service Enterprise, LLC.

15.     Defendants further failed to pay the new car sales representatives ten (10) percent commissions on these additional "back end" charges, although the sales representatives were guaranteed ten (10) percent commissions on these charges.

16.     Major World also failed to pay ten (10) percent commissions on "reserve money"

- 4 -

on new vehicles which were financed, per its agreements with the sales representatives.

17.     Unknown to the customer, Major World added charges commonly referred to as "the triple" onto nearly every new and used car deal. This consisted of the sale of extended warranties, wheel and tire protection, and vin etching. Costs for these items were deducted from gross profits, thereby reducing the sales representatives' commissions, but nevertheless were paid to the Defendants through their subsidiaries.

18.     Major World also charged back the sales representatives for lateness, failure to properly fill out forms, and other arbitrary and purported infractions. Additionally, sales representatives were also subjected to numerous unexplained chargebacks, some of which were made weeks or months after the sales representative closed a deal, received the commission, and was given a commission breakdown.

19.     In further contravention of the sales agreement, Major World would only pay its sales representatives a $100.00 flat rate commission for vehicles that were financed through its in-house financing firm, regardless of the actual gross profits. These deals were commonly referred to by Major World as "FF deals." The flat rate commission paid on these FF deals drastically reduced sales representatives' commissions, and were never agreed to by the sales representatives.

20.     Major World also deducted $25.00 from sales representatives' commissions for new cars sold for manufacturer certification, which, if achieved, would match "dollar for dollar." When manufacturer certification was not achieved, the money deducted was not returned to the sales representatives. Moreover, Major World also retained manufacturer incentives earned by sales representatives, known as "spin money."

21.     Plaintiffs sustained direct and proximate financial harm to their income as a result

of Defendants' unscrupulous business practices, perpetrated in order to avoid payment to its employees.

22.    Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former employees in the position of sales representatives at Major World who elect to opt into this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("Fair Labor Standards Act" or "FLSA"), and specifically the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the minimum wage provisions of the FLSA.

23.    Plaintiffs also bring claims on behalf of themselves and a class of similarly situated current and former employees who work or worked for Defendants as sales representatives in New York, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for failure to pay minimum wage, failure to pay agreed upon wages, unlawful retention of wages, and unlawful deduction of commissions in violation of the New York Labor Law Article 19, §§ 650 *et seq.*, the NYLL Article 6, §§ 190, 191 *et seq.*, and 193, the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("New York Labor Law" or "NYLL"), and the common law.

## THE PARTIES

### Plaintiffs

### Slobodan Karic

24.    Plaintiff Slobodan Karic ("Karic") is an adult individual who is a resident of Waterbury, Connecticut.

25.    Karic has been employed by Major World as a sales representative from approximately August 2005 through August 2007, and from approximately March 2008 to the present.

- 6 -

26.     Karic is a covered employee within the meaning of the FLSA and the NYLL.

27.     A written consent form for Karic is attached as Exhibit A to this Class Action Complaint.

**Claribel Garcia**

28.     Plaintiff Claribel Garcia ("Garcia") is an adult individual who is a resident of Brooklyn, New York.

29.     Garcia has been employed by Major World as a sales representative from approximately 2005 through the present.

30.     Garcia is a covered employee within the meaning of the FLSA and the NYLL.

31.     A written consent form for Garcia is attached as Exhibit A to this Class Action Complaint.

**Steven Jones**

32.     Plaintiff Steven Jones ("Jones") is an adult individual who is a resident of Brooklyn, New York.

33.     Jones was employed by Major World as a sales representative from approximately June 2009 through October 2009.

34.     Jones is a covered employee within the meaning of the FLSA and the NYLL.

35.     A written consent form for Jones is attached as Exhibit A to this Class Action Complaint.

**Goran Stanic**

36.     Plaintiff Goran Stanic ("Stanic") is an adult individual who is a resident of New York, New York.

37.     Stanic was employed by Major World as a sales representative from approximately July 2005 through June 2008.

38.     Stanic is a covered employee within the meaning of the FLSA and the NYLL.

39.     A written consent form for Stanic is attached as Exhibit A to this Class Action Complaint.

### Ljubomir Zivanovic

40.     Plaintiff Ljubomir Zivanovic ("Zivanovic") is an adult individual who is a resident of Avenel, New Jersey.

41.     Zivanovic was employed by Major World as a sales representative from approximately late 2006 through May 2008.

42.     Zivanovic is a covered employee within the meaning of the FLSA and the NYLL.

43.     A written consent form for Zivanovic is attached as Exhibit A to this Class Action Complaint.

### Danny Colon

44.     Plaintiff Danny Colon ("Colon") is an adult individual who is a resident of New York, New York.

45.     Colon was employed by Major World as a sales representative from approximately August 2006 to the present.

46.     Colon is a covered employee within the meaning of the FLSA and the NYLL.

47.     A written consent form for Colon is attached as Exhibit A to this Class Action Complaint.

### William Chatman

48.    Plaintiff William Chatman ("Chatman") is an adult individual who is a resident of Bronx, New York.

49.    Chatman was employed by Major World as a sales representative from approximately 2007 to December 8, 2009.

50.    Chatman is a covered employee within the meaning of the FLSA and the NYLL.

51.    A written consent form for Chatman is attached as Exhibit A to this Class Action Complaint.

### Defendants

52.    Defendants The Major Automotive Companies, Inc., Major Universe, Inc., Major Universe, Inc. d/b/a Major Ford Lincoln Mercury, Major Chevrolet GEO, Major Chevrolet, Inc., Major Chrysler Jeep Dodge, Inc., Major Motors of Long Island City, Inc. d/b/a Major Kia, Major Motors of the Five Towns, Inc., Major Automotive Realty Corp., Bruce Bendell, Harold Bendell, and Chris Orsaris (collectively "Defendants") jointly employed Plaintiffs and similarly situated employees at all times relevant.  Each Defendant has had substantial control over Plaintiffs' wages and commissions, and over the unlawful policies and practices alleged herein.

53.    During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and NYLL.

54.    Upon information and belief, Defendants are part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees at all times relevant.

55.    Upon information and belief, Defendants' operations are interrelated and unified.

56.    Upon information and belief, during all relevant times, all of the Major World dealerships shared a common management and were centrally controlled and/or owned by

Defendants.

57.     Upon information and belief, during all relevant times, Defendants have had control over, and the power to change compensation practices at Major World.

58.     Upon information and belief, Defendants have had the power to determine employee policies at Major World, including, but not limited to, payment of wages, deductions from commissions, and commission chargebacks.

**The Major Automotive Companies, Inc.**

59.     Together with the other Defendants, The Major Automotive Companies, Inc. ("Major Automotive") has owned and/or operated Major World during the relevant period.

60.     Major Automotive is a foreign business corporation organized and existing under the laws of Nevada.

61.     Major Automotive's principal executive office is located at 43-40 Northern Boulevard, Long Island City, New York 11101.

62.     Major Automotive is a covered employer within the meaning of the FLSA and NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

63.     Upon information and belief, at all times relevant, Major Automotive's annual gross volume of sales made or business done was not less than $500,000.00.

**Major Universe, Inc.**

64.     Together with the other Defendants, Major Universe, Inc. has owned and/or operated Major World during the relevant period.

65.     Major Universe, Inc. is a domestic business corporation organized and existing under the laws of New York.

66.     Major Universe, Inc.'s principal executive office is located at 50-30 Northern Boulevard, Long Island City, New York 11101.

67.     Major Universe, Inc. is a covered employer within the meaning of the FLSA and NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

68.     Upon information and belief, at all times relevant, Major Universe, Inc.'s annual gross volume of sales made or business done was not less than $500,000.00.

**Major Universe, Inc. d/b/a Major Ford Lincoln Mercury and Major Chevrolet GEO**

69.     Together with the other Defendants, Major Universe, Inc. d/b/a Major Ford Lincoln Mercury and Major Chevrolet GEO ("Major Universe") has owned and/or operated Major World during the relevant period.

70.     Major Universe is a domestic business corporation organized and existing under the laws of New York.

71.     Major Universe's principal executive office is located at 50-30 Northern Boulevard, Long Island City, New York 11101.

72.     Major Universe is a covered employer within the meaning of the FLSA and NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

73.     Upon information and belief, at all times relevant, Major Universe's annual gross volume of sales made or business done was not less than $500,000.00.

**Major Chevrolet, Inc.**

74.     Together with the other Defendants, Major Chevrolet, Inc. ("Major Chevrolet") has owned and/or operated Major World during the relevant period.

75.     Major Chevrolet is a domestic business corporation organized and existing under the laws of New York.

76.     Major Chevrolet's principal executive office is located at 43-40 Northern Boulevard, Long Island City, New York 11101.

77.     Major Chevrolet is a covered employer within the meaning of the FLSA and NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

78.     Upon information and belief, at all times relevant, Major Chevrolet's annual gross volume of sales made or business done was not less than $500,000.00.

**Major Chrysler Jeep Dodge, Inc.**

79.     Together with the other Defendants, Major Chrysler Jeep Dodge, Inc. ("Major CJD") has owned and/or operated Major World during the relevant period.

80.     Major CJD is a domestic business corporation organized and existing under the laws of New York.

81.     Major CJD's principal executive office is located at 43-40 Northern Boulevard, Long Island City, New York 11101.

82.     Major CJD is a covered employer within the meaning of the FLSA and NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

83.     Upon information and belief, at all times relevant, Major CJD's annual gross volume of sales made or business done was not less than $500,000.00.

**Major Motors of Long Island City, Inc. d/b/a Major Kia**

84.     Together with the other Defendants, Major Motors of Long Island City, Inc. d/b/a

Major Kia ("Major Kia") has owned and/or operated Major World during the relevant period.

85.     Major Kia is a domestic business corporation organized and existing under the laws of New York.

86.     Major Kia's principal executive office is located at 43-40 Northern Boulevard, Long Island City, New York 11101.

87.     Major Kia is a covered employer within the meaning of the FLSA and NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

88.     Upon information and belief, at all times relevant, Major Kia's annual gross volume of sales made or business done was not less than $500,000.00.

**Major Motors of the Five Towns, Inc.**

89.     Together with the other Defendants, Major Motors of the Five Towns, Inc. ("Major Five Towns") has owned and/or operated Major World during the relevant period.

90.     Major Five Towns is a domestic business corporation organized and existing under the laws of New York.

91.     Major Five Towns' principal executive office is located at 43-40 Northern Boulevard, Long Island City, New York 11101.

92.     Major Five Towns is a covered employer within the meaning of the FLSA and NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

93.     Upon information and belief, at all times relevant, Major Five Towns' annual gross volume of sales made or business done was not less than $500,000.00.

**Major Automotive Realty Corp.**

94.     Together with the other Defendants, Major Automotive Realty Corp. ("Major Realty") has owned and/or operated Major World during the relevant period.

95.     Major Realty is a domestic business corporation organized and existing under the laws of New York.

96.     Major Realty's principal executive office is located at 43-40 Northern Boulevard, Long Island City, New York 11101.

97.     Major Realty is a covered employer within the meaning of the FLSA and NYLL, and, at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

98.     Upon information and belief, at all times relevant, Major Realty's annual gross volume of sales made or business done was not less than $500,000.00.

**Individual Defendants**

99.     Bruce Bendell, Harold Bendell, and Chris Orsaris ("Individual Defendants"), maintained control over, oversaw, and directed the operation of Major World, including its employment practices, during the relevant period.

100.    Upon information and belief, the Individual Defendants manage and/or operate Major World.

101.    During all times relevant, the Individual Defendants were "employers" under the FLSA and NYLL, and employed or jointly employed Plaintiffs and similarly situated employees.

102.    Upon information and belief, throughout the relevant period, the Individual Defendants have had the power to control the operations and compensation practices at Major World.

- 14 -

**Harold Bendell**

103.   Upon information and belief, Defendant Harold Bendell is a resident of the State of New York.

104.   At all relevant times, Harold Bendell has been a senior executive of Major World.

105.   Upon information and belief, at all relevant times, Harold Bendell has had power over personnel decisions at Major World, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

106.   Upon information and belief, at all relevant time, Harold Bendell has had power over payroll decisions at Major World, including the power to withhold wages and make deductions against commissions.

107.   Upon information and belief, Harold Bendell is actively involved in managing the day to day operations of Major World.

108.   Upon information and belief, at all times relevant, Harold Bendell has also had the power to stop any illegal pay practices that harmed Plaintiffs.

109.   Harold Bendell is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

**Bruce Bendell**

110.   Upon information and belief, Defendant Bruce Bendell is a resident of the State of New York.

111.   At all relevant times, Bruce Bendell has been the President, Chief Executive Officer, Chief Financial Officer, and Chief Operating Officer of Major World.

112.   Upon information and belief, at all relevant times, Bruce Bendell has had power

- 15 -

over personnel decisions at Major World, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

113.    Upon information and belief, at all relevant time, Bruce Bendell has had power over payroll decisions at Major World, including the power to withhold wages and make deductions against commissions.

114.    Upon information and belief, Bruce Bendell is actively involved in managing the day to day operations of Major World.

115.    Upon information and belief, at all times relevant, Bruce Bendell has also had the power to stop any illegal pay practices that harmed Plaintiffs.

116.    Bruce Bendell is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

**Chris Orsaris**

117.    Upon information and belief, Defendant Chris Orsaris ("Orsaris") is a resident of the State of New York.

118.    At all relevant times, Orsaris has been the General Manager of Major World.

119.    Upon information and belief, at all relevant times, Orsaris has had power over personnel decisions at Major World, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

120.    Upon information and belief, at all relevant time, Orsaris has had power over payroll decisions at Major World, including the power to withhold wages and make deductions against commissions.

121.    Upon information and belief, Orsaris is actively involved in managing the day to

- 16 -

day operations of Major World.

122.    Upon information and belief, at all times relevant, Orsaris has also had the power to stop any illegal pay practices that harmed Plaintiffs.

123.    Orsaris is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

124.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

125.    Plaintiffs' state law claims are so closely related to their claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

126.    This Court also has personal jurisdiction pursuant to New York Civil Practice Law Rule 302(a)(1) and Federal Rule of Civil Procedure 4.

127.    This Court also has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b).

128.    Upon information and belief, the amount in controversy in this matter exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.

129.    At least one member of the proposed class is a citizen of a state different from that of at least one Defendant.

130.    Upon information and belief, at least one Defendant resides in New York.

131.    The claims asserted involve matters of national and interstate interest.

132.    Upon information and belief, at least one Defendant is subject to personal jurisdiction in New York.

133.   This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

134.   Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

135.   Plaintiffs bring the First Cause of Action, an FLSA Claim, on behalf of themselves and all similarly situated persons who have worked as sales representatives at Major World in New York who elect to opt in to this action ("the FLSA Collective").

136.   Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs. Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

137.   Plaintiffs bring the Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action, NYLL and common law claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> all persons who have worked as sales representatives at Major World auto dealerships in New York between December 30, 2003 and the date of final judgment in this matter (the "Rule 23 Class").

138.   Excluded from the Rule 23 Class are Defendants; Defendants' legal

- 18 -

representatives, officers, directors, assigns, and successors, or any individual who has, or who has had at any time during the class period, a controlling interest in Major World; the judge(s) to whom this case is assigned and any member of the judge(s)' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

139.   The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

140.   Upon information and belief, the size of the Rule 23 Class is over 100 individuals. Although the precise number of such employees is unknown, the relevant facts are presently within the sole control of Defendants.

141.   Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

142.   Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

   (a) whether Defendants violated NYLL Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 137, as alleged herein;

   (b) whether Defendants failed to pay Plaintiffs and the Rule 23 Class minimum wages for all of the hours they worked;

   (c) whether Defendants failed to pay Plaintiffs and the Rule 23 Class wages and all other monies earned in accordance with the agreed terms of employment, as required by the NYLL;

   (d) whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with accurate statements of earnings, as required by the NYLL;

   (e) whether Defendants made unlawful deductions from the wages of Plaintiffs and the Rule 23 Class, in violation of the NYLL;

(f) whether Defendants failed to pay Plaintiffs and the Rule 23 Class agreed upon wages;

(g) whether Defendants' policy of failing to pay Plaintiffs and the Rule 23 Class was instituted willfully or with reckless disregard of the law;

(h) the nature and extent of class-wide injury and the measure of damages for those injuries.

143.    The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.   Plaintiffs and the members of the Rule 23 Class all work, or have worked, for Defendant as sales representatives for Major World.  Plaintiffs and the members of the Rule 23 Class enjoy the same statutory rights under the NYLL to keep the wages they earn.  Plaintiffs and the members of the Rule 23 Class have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiffs and the members of the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns.

144.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.  Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between the Plaintiffs and the members of the Rule 23 Class.

145.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL as well as their common and uniform policies, practices, and procedures.  Although the relative damages suffered by the members of the Rule 23 Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.  In addition,

class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

146. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## PLAINTIFFS' FACTUAL ALLEGATIONS

147. Consistent with Defendants' policies, patterns or practices as described herein, Defendants harmed Plaintiffs individually as follows:

**Slobodan Karic**

148. Defendants did not pay Plaintiff Karic the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

149. Defendants withheld from Karic commissions he earned from selling new and used vehicles for Defendants, where Defendants had agreed to pay these commissions to Karic upon performance, and where such commissions were due to Karic in accordance with the agreed terms of his employment.

150. On "FF deals," deals that were financed through Major World's in-house financing company, Defendants would only pay Karic commissions of $100.00, regardless of the gross profit on the car sold. Karic never agreed to the commission structure for these "FF deals," and such deals were not paid in accordance with the agreed terms of his employment.

151. Defendants made deductions from Karic's wages that were not in accordance with the provisions of any law, rule, or regulation, and that were not expressly authorized by Karic nor made for his benefit.

152. Defendants made consistent chargebacks against Karic's commissions that were not agreed upon.

153.    Upon information and belief, Defendants did not furnish an accurate statement of earnings to Karic, in violation of the NYLL.

**Claribel Garcia**

154.    Defendants did not pay Plaintiff Garcia the proper minimum wage for all of the time that she was suffered or permitted to work each workweek.

155.    Defendants withheld from Garcia commissions she earned from selling new and used vehicles for Defendants, where Defendants had agreed to pay these commissions to Garcia upon performance, and where such commissions were due to Garcia in accordance with the agreed terms of her employment.

156.    On "FF deals," deals that were financed through Major World's in-house financing company, Defendants would only pay Garcia commissions of $100.00, regardless of the gross profit on the car sold.  Garcia never agreed to the commission structure for these "FF deals," and such deals were not paid in accordance with the agreed terms of her employment.

157.    Defendants made deductions from Garcia's wages that were not in accordance with the provisions of any law, rule, or regulation, and that were not expressly authorized by Garcia nor made for her benefit.

158.    Defendants made consistent chargebacks against Garcia's commissions that were not agreed upon.

159.    Upon information and belief, Defendants did not furnish an accurate statement of earnings to Garcia, in violation of the NYLL.

**Steven Jones**

160.    Defendants did not pay Plaintiff Jones the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

161. Defendants withheld from Jones commissions he earned from selling new and used vehicles for Defendants, where Defendants had agreed to pay these commissions to Jones upon performance, and where such commissions were due to Jones in accordance with the agreed terms of his employment.

162. On "FF deals," deals that were financed through Major World's in-house financing company, Defendants would only pay Jones commissions of $100.00, regardless of the gross profit on the car sold. Jones never agreed to the commission structure for these "FF deals," and such deals were not paid in accordance with the agreed terms of his employment.

163. Defendants made deductions from Jones' wages that were not in accordance with the provisions of any law, rule, or regulation, and that were not expressly authorized by Jones nor made for his benefit.

164. Defendants made consistent chargebacks against Jones' commissions that were not agreed upon.

165. Upon information and belief, Defendants did not reduce the agreed terms of Jones' employment to writing, and did not furnish an accurate statement of earnings to Jones, in violation of the NYLL.

**Goran Stanic**

166. Defendants did not pay Plaintiff Stanic the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

167. Defendants withheld from Stanic commissions he earned from selling new and used vehicles for Defendants, where Defendants had agreed to pay these commissions to Stanic upon performance, and where such commissions were due to Stanic in accordance with the agreed terms of his employment.

- 23 -

168. On "FF deals," deals that were financed through Major World's in-house financing company, Defendants would only pay Stanic commissions of $100.00, regardless of the gross profit on the car sold. Stanic never agreed to the commission structure for these "FF deals," and such deals were not paid in accordance with the agreed terms of his employment.

169. Defendants made deductions from Stanic's wages that were not in accordance with the provisions of any law, rule, or regulation, and that were not expressly authorized by Stanic nor made for his benefit.

170. Defendants made consistent chargebacks against Stanic's commissions that were not agreed upon.

171. Upon information and belief, Defendants did not reduce the agreed terms of Stanic's employment to writing, and did not furnish an accurate statement of earnings to Stanic, in violation of the NYLL.

**Ljubomir Zivanovic**

172. Defendants did not pay Plaintiff Zivanovic the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

173. Defendants withheld from Zivanovic commissions he earned from selling new and used vehicles for Defendants, where Defendants had agreed to pay these commissions to Zivanovic upon performance, and where such commissions were due to Zivanovic in accordance with the agreed terms of his employment.

174. On "FF deals," deals that were financed through Major World's in-house financing company, Defendants would only pay Zivanovic commissions of $100.00, regardless of the gross profit on the car sold. Zivanovic never agreed to the commission structure for these "FF deals," and such deals were not paid in accordance with the agreed terms of his employment.

175. Defendants made deductions from Zivanovic's wages that were not in accordance with the provisions of any law, rule, or regulation, and that were not expressly authorized by Zivanovic nor made for his benefit.

176. Defendants made consistent chargebacks against Zivanovic's commissions that were not agreed upon.

177. Upon information and belief, Defendants did not reduce the agreed terms of Zivanovic's employment to writing, and did not furnish an accurate statement of earnings to Zivanovic, in violation of the NYLL.

**Daniel Colon**

178. Defendants did not pay Plaintiff Colon the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

179. Defendants withheld from Colon commissions he earned from selling new and used vehicles for Defendants, where Defendants had agreed to pay these commissions to Colon upon performance, and where such commissions were due to Colon in accordance with the agreed terms of his employment.

180. On "FF deals," deals that were financed through Major World's in-house financing company, Defendants would only pay Colon commissions of $100.00, regardless of the gross profit on the car sold. Colon never agreed to the commission structure for these "FF deals," and such deals were not paid in accordance with the agreed terms of his employment.

181. Defendants made deductions from Colon's wages that were not in accordance with the provisions of any law, rule, or regulation, and that were not expressly authorized by Colon nor made for his benefit.

- 25 -

182.   Defendants made consistent chargebacks against Colon's commissions that were not agreed upon.

183.   Upon information and belief, Defendants did not reduce the agreed terms of Colon's employment to writing, and did not furnish an accurate statement of earnings to Colon, in violation of the NYLL.

**William Chatman**

184.   Defendants did not pay Plaintiff Chatman the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

185.   Defendants withheld from Chatman commissions he earned from selling new and used vehicles for Defendants, where Defendants had agreed to pay these commissions to Chatman upon performance, and where such commissions were due to Chatman in accordance with the agreed terms of his employment.

186.   On "FF deals," deals that were financed through Major World's in-house financing company, Defendants would only pay Chatman commissions of $100.00, regardless of the gross profit on the car sold. Chatman never agreed to the commission structure for these "FF deals," and such deals were not paid in accordance with the agreed terms of his employment.

187.   Defendants made deductions from Chatman's wages that were not in accordance with the provisions of any law, rule, or regulation, and that were not expressly authorized by Chatman nor made for his benefit.

188.   Defendants made consistent chargebacks against Chatman's commissions that were not agreed upon.

189.    Upon information and belief, Defendants did not reduce the agreed terms of Chatman's employment to writing, and did not furnish an accurate statement of earnings to Chatman, in violation of the NYLL.

## FIRST CAUSE OF ACTION

### Fair Labor Standards Act: Failure to Pay Minimum Wage
### (Brought on behalf of Plaintiffs and the FLSA Collective)

190.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

191.    Defendants failed to pay Plaintiffs and the members of the FLSA Collective the minimum wages to which they are entitled under the FLSA.

192.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

193.    At all times relevant, Plaintiffs and the members of the FLSA Collective were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

194.    At all times relevant, Plaintiffs and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

195.    At all times relevant, Defendants have been individual employers and/or joint employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

196.    Defendants were required to pay directly to Plaintiffs and the members of the FLSA Collective the applicable federal minimum wage rate for all hours worked.

197.    Defendants failed to post and keep posted in a conspicuous place on their premises a notice explaining the FLSA, as prescribed by the Wage and Hour Division of the U.S.

Department of Labor, in violation of the FLSA, 29 U.S.C. § 203(m) and supporting federal regulations, including but not limited to 29 C.F.R. § 516.4.

198.    As a result of Defendants' violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

199.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the FLSA Collective.

200.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**SECOND CAUSE OF ACTION**

**New York Labor Law Article 19: Minimum Wage**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

201.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

202.    Defendants failed to pay Plaintiffs and the members of the Rule 23 Class the minimum wages to which they are entitled under the NYLL.

203.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

204.    At all times relevant, Plaintiffs and the members of the Rule 23 Class have been

employees and Defendants have been employers within the meaning of the NYLL §§ 190, 651(5), 652 and the supporting New York State Department of Labor Regulations.

205. The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor regulations apply to Defendants and protect Plaintiffs and the members of the Rule 23 Class.

206. Defendants were required to pay Plaintiffs a minimum wage at a rate of (a) $5.15 per hour for all hours worked from June 24, 2000 through December 31, 2004; (b) $6.00 per hour for all hours worked from January 1, 2005 through December 31, 2005; (c) $6.75 per hour for all hours worked from January 1, 2006 through December 31, 2006; (d) $7.15 per hour for all hours worked from January 1, 2007 through July 24, 2009; and (e) $7.25 per hour for all hours worked from July 25, 2009 to the present, under the NYLL § 652 and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. § 137-1.2.

207. By Defendants' knowing or intentional failure to pay Plaintiffs and the members of the Rule 23 Class minimum hourly wages, they have willfully violated the NYLL Article 19 §§ 650 *et seq.* and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. § 137-1.2.

208. Defendants failed to furnish Plaintiffs and the members of the Rule 23 Class a statement with every payment of wages listing hours worked, rates paid, and gross wages as part of their minimum hourly wage rate, in violation of the NYLL and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. § 137-2.2.

209. Due to Defendants' violations of the NYLL, Plaintiffs and the members of the

Rule 23 Class are entitled to recover from Defendants their unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.  Plaintiffs do not seek liquidated damages under the NYLL, but reserve their right to do so depending on the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*.

## THIRD CAUSE OF ACTION

### New York Labor Law Article 6 – Unpaid Commissions
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

210.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

211.    At all times relevant, Plaintiffs and the members of the Rule 23 Class have been employees within the meaning of NYLL §§ 190, *et seq.*, and any supporting New York State Department of Labor regulations.

212.    At all times relevant, Defendants have been employers within the meaning of NYLL §§ 190, *et seq.*, and any supporting New York State Department of Labor regulations.

213.    The wage payment provisions of Article 6 of the NYLL and any supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs and the Rule 23 Class.

214.    Defendants failed to pay Plaintiffs and the Rule 23 Class commissions earned in accordance with the agreed upon terms of their employment.

215.    By Defendants' knowing or intentional failure to pay earned commissions to Plaintiffs and the Rule 23 Class, Defendants have willfully violated NYLL Article 6, § 191(1)(c).

216.    Defendants also violated NYLL Article 6, § 191(1)(c) by failing to reduce to writing the agreed terms of employment between Major World and Plaintiffs and the Rule 23

- 30 -

Class, and failing to furnish Plaintiffs and the Rule 23 Class with an accurate statement of earnings.

217.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.  Plaintiffs do not seek liquidated damages under the NYLL, but reserve their right to do so depending on the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*.

## FOURTH CAUSE OF ACTION

### New York Labor Law Article 6 – Unlawful Deductions From Wages
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

218.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

219.    Defendants made unlawful deductions from the wages of Plaintiffs and the Rule 23 Class.

220.    The deductions Defendants made from the wages of Plaintiffs and the Rule 23 Class were not expressly authorized in writing by Plaintiffs and the Rule 23 Class, and were not for the benefit of Plaintiffs and the Rule 23 Class.

221.    Defendants' unlawful deductions include, but are not limited to, chargebacks for "the triple," auction fees, service contracts, extended warranties, mechanical problems with cars sold, missing keys, and various purported workplace infractions, including, but not limited to lateness, failing to properly fill out forms, and standing at "the point."

222.    By Defendants' knowing or intentional effort to make deductions from the wages of Plaintiffs and the Rule 23 Class, Defendants have willfully violated NYLL Article 6, § 193.

223.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are

entitled to recover from Defendants their unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest. Plaintiffs do not seek liquidated damages under the NYLL, but reserve their right to do so depending on the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company.*

## FIFTH CAUSE OF ACTION

### Breach of Contract
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

224.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

225.   Plaintiffs and the Rule 23 Class entered into a contract with Defendants in which they were promised twenty (20) percent commissions on the gross profit from the front end of all sales of new and used cars, and ten (10) percent commissions on the gross profit from the back end of all sales of new cars.

226.   Plaintiffs and the Rule 23 Class were not paid the full value of the commissions they earned according to the agreed upon terms of their contract with Defendants, even though they have performed services for Defendants.

227.   Due to Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to be paid at the agreed commissions rate of twenty (20) percent on the gross profit from the front end of all sales of new and used cars, and ten (10) percent commissions on the gross profit from the back end of all sales of new cars, along with consequential damages, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION

### Quantum Meruit
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

228.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

229.    Plaintiffs and the Rule 23 Class have not been paid wages, even though they have performed services for Defendants.

230.    Plaintiffs and the Rule 23 Class have performed the duties of their jobs in good faith, these services have been accepted by Defendants, Plaintiffs and the Rule 23 Class have a reasonable expectation of being compensated for such services, and they are entitled to the reasonable value of these services.

231.    Due to Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to be paid for their unpaid wages, along with consequential damages, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

232.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

233.    Plaintiffs and the Rule 23 Class have not been paid wages, even though they have performed services for Defendants.

234.    Since Plaintiffs and the Rule 23 Class have performed the duties of their jobs, Defendants have been enriched at Plaintiffs' and the Rule 23 Class' expense, and the circumstances are such that equity and good conscience require restitution.

- 33 -

235. Due to Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to be paid their unpaid wages, along with consequential damages, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION

### Conversion
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

236. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

237. The commission rates of twenty (20) percent on the gross profit from the front end of all sales of new and used cars and ten (10) percent commissions on the gross profit from the back end of all sales of new cars were intended to compensate Plaintiffs and the Rule 23 Class as compensation for their services.

238. Defendants did not pay Plaintiffs and the Rule 23 Class the full commissions owed, and instead retained the monies in their own accounts. The monies in Defendants' accounts are under the Defendants' dominion and control, to the exclusion of Plaintiffs' and the Rule 23 Class' property rights.

239. Accordingly, Defendants are liable to Plaintiffs and the Rule 23 Class for the unpaid commissions Defendants have retained during the Class Period, plus an additional payment of interest and any other compensation permitted by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, collectively and on behalf of all other similarly situated persons, pray for the following relief:

A.    At the earliest possible time, Plaintiffs should be allowed to give notice of this class action, or that the court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Major World at its worksites in New York as sales representatives or in roles with the same or similar duties but different titles.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper minimum wage;

B.    Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq.* and the supporting United States Department of Labor regulations for Plaintiffs and all those similarly situated;

C.    Unpaid minimum wages, agreed upon wages, unpaid commissions and unlawful deductions of wages pursuant to NYLL Article 6, §§ 190, 191 *et seq.*, and 193, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations (Plaintiffs do not seek liquidated damages under the NYLL on behalf of the New York Class but reserve their right to do so depending on the United States Supreme Court's ruling in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*).

D.    Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

E.    Pre-judgment interest and post-judgment interest;

F.     An injunction requiring Defendants to pay all statutorily required wages pursuant to the NYLL;

G.     Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under NYLL Article 6, §§ 190, 191 *et seq.*, and 193, and NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations;

H.     Reasonable attorneys' fees and costs of the action; and

I.     Such other relief as this Court shall deem just and proper.

Dated:     New York, New York
           December 30, 2009

Respectfully submitted,

**FITAPELLI & SCHAFFER, LLP**
By:

Joseph A. Fitapelli (JAF 9058)

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli (JAF 9058)
Brian S. Schaffer (BSS 7548)
1250 Broadway, Suite 3701
New York, New York 10001
Telephone: (212)300-0375

**Attorneys for Plaintiffs and
the Putative Class**

- 36 -

## FAIR LABOR STANDARDS ACT CONSENT

I, consent to be a party plaintiff in a lawsuit against major World and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216 (b). I hereby designate Fitapelli & Schaffer, LLP to represent me in such a lawsuit.

_Slobodan kur_

Signature

_Slobodan Kapic_

Full Legal Name (Print)

Address

City, State          Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I, consent to be a party plaintiff in a lawsuit against major World and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216 (b). I hereby designate Fitapelli & Schaffer, LLP to represent me in such a lawsuit.

Signature

*Claribel Garcia*

Full Legal Name (Print)

Address

City, State        Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I, consent to be a party plaintiff in a lawsuit against major World and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216 (b). I hereby designate Fitapelli & Schaffer, LLP to represent me in such a lawsuit.

*Steven Jones*

Signature

*Steven Jones*

Full Legal Name (Print)

Address

City, State        Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I, consent to be a party plaintiff in a lawsuit against major World and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216 (b).  I hereby designate Fitapelli & Schaffer, LLP to represent me in such a lawsuit.

_____

Signature

*Goran O. Stanic*

Full Legal Name (Print)

*GORAN O. STANIC*

Address

City, State          Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I, consent to be a party plaintiff in a lawsuit against major World and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216 (b). I hereby designate Fitapelli & Schaffer, LLP to represent me in such a lawsuit.

*Cyluwar Zvanovic*

Signature

*LJUDOMIR ZIVANOVIC*

Full Legal Name (Print)

████████████████████

Address

████████████████████

City, State          Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I, consent to be a party plaintiff in a lawsuit against major World and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216 (b). I hereby designate Fitapelli & Schaffer, LLP to represent me in such a lawsuit.

Signature

*Danny Colon*

Full Legal Name (Print)

Address

City, State          Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I, consent to be a party plaintiff in a lawsuit against major World and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216 (b). I hereby designate Fitapelli & Schaffer, LLP to represent me in such a lawsuit.

*Chatman*

Signature

*William Chapman*

Full Legal Name (Print)

Address

City, State          Zip Code