**SQUITIERI & FEARON, LLP**
Lee Squitieri
Garry T. Stevens, Jr.
32 East 57th Street
12th Floor
New York, New York 10022
Tel:    212-421-6492
Fax:    212-421-6553

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SLOBODAN KARIC, CLARIBEL GARCIA, STEVEN JONES, GORAN STANIC, LJUBOMIR ZIVANOVIC, DANIEL COLON, and WILLIAM CHATMAN, on behalf of themselves and all others similarly, <br><br> Plaintiffs, <br><br> -against- <br><br> THE MAJOR AUTOMOTIVE COMPANIES, INC., MAJOR UNIVERSE, INC., MAJOR UNIVERSE, INC. d/b/a MAJOR WORLD FORD LINCOLN MERCURY, MAJOR CHEVROLET GEO, MAJOR CHEVROLET, INC., MAJOR CHRYSLER JEEP DODGE, INC., MAJOR MOTORS OF LONG ISLAND CITY, INC. d/b/a MAJOR KIA, MAJOR MOTORS OF THE FIVE TOWNS, INC., MAJOR AUTOMOTIVE REALTY CORP., HAROLD BENDELL, BRUCE BENDELL, and CHRIS ORSARIS, individually, <br><br> Defendants. | No: 09-CV-5708 (ENV)(CLP) |

## MAJOR DEFENDANTS' MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 3

STATEMENT OF FACTS .............................................................................................. 7

    A.    Plaintiffs Were All Salespeople Who Were Paid An Agreed Salary Consisting Of A Per Diem Amount Plus Commission For All Hours Worked ............................................................. 7

    B.    Car Sales Commission Were All Governed By The Same Detailed Formula That Was Known To And Accepted By All Plaintiffs; All Of The So-Called "Illegal Deductions" Were Part Of The Commission Formula Agreed To And Accepted By All Plaintiffs ...................... 7

I.    SUMMARY JUDGMENT STANDARDS ........................................................... 8

II.    PLAINTIFFS HAVE FAILED TO PROVIDE EVIDENCE OF A PRIMA FACIE CASE FOR PAYMENT OF (1) MINIMUM WAGE OR (2) OVERTIME OR (3) ANY UNPAID COMMISSIONS ............................................................................................................. 9

III.    MAJOR DEFENDANTS KEPT SUFFICIENT BOOKS AND RECORDS TO PRECLUDE PLAINTIFFS FROM RELYING SOLELY ON THEIR GENERALIZED RECOLLECTIONS THAT THEY "OFTEN WORKED OVERTIME" ..................................... 10

IV.    PLAINTIFFS' QUESTIONABLE CREDIBILITY PRECLUDES SUMMARY JUDGMENT ................................................................................................................... 12

V.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ANY ISSUE OR ELEMENT OF THEIR CLAIMS FOR COMMISSIONS WOULD ............................. 14

VI.    LIQUIDATED DAMAGES AND WILLFULNESS ........................................ 18

VII.    PLAINTIFFS HAVE NOT ESTABLISHED A SINGLE IMPROPER "CHARGE BACK" ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................................. 9

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946) .............................................. 9, 10, 13

*Arbeeney v., Kennedy Executive Search Inc.*, 71 A.D. 3d 177, 839 NYS 2d 39 (1st Dept. 2010) 17

*Azkour v. Little Rest Twelve,* No. 10-CV-4132, 2012 WL 402049 (S.D.N.Y. Feb., 7, 2012) ...... 19

*Berrio v. Nicholas Zilo Racing Stable, Inc.*, 849 F. Supp. 2d 272 (E.D.N.Y. 2012) ................... 11

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................................................ 8

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) .......................... 19

*Cuervo v. Opera Solutions, LLC,* 87 A.D. 3d 426, 928 N.Y.S. 2d 26 (1st Dept. 2011) .............. 17

*Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003) .............................................................. 12

*Gold v. New York Life Ins.*, (S.D.N.Y. 2011) 2011 WL 2421281 (May 19, 2011) ..................... 17

*Jankousky v. North Fork Bancorporation, Inc.*, No. 08-cv-1858, 2011 WL 1118602 (S.D.N.Y. Mar. 23, 2011) ..................................................................................................................... 21

*Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005) ........................................................... 9

*Kaur v. Royal Arcadia Palace, Inc.,* 643 F.Supp.2d 276 (E.D.N.Y. 2007) ................................. 19

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988) ............................................................. 18

*McLean v. Garage Mgmt. Corp.*, 10 CIV. 3950 DLC, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012) ...................................................................................................................................... 19

*Mendez v. Radec Corp.*, 232 F.R.D. 78 (W.D.N.Y. 2005) .......................................................... 14

*Moon v. Kwon,* 248 F.Supp.2d 201 (S.D.N.Y. 2002) .................................................................. 18

*Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y. 3d 609, 861 NYS 2d 246 (2008) .......... 15, 16, 17

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009) ....................................................... 13

*Pinto v. Allstate Ins. Co.,* 221 F.3d 394 (2d Cir. 2000) ................................................................ 9

*Ramirez v. Rifkin,* 568 F.Supp.2d 262 (E.D.N.Y. 2008) ............................................................. 19

*Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381 (E.D.N.Y. 2007) .................................. 11, 13

*Vasquez v. Ranieri Cheese Corp.*, 07-CV-464-ENV-VVP, 2010 WL 1223606 (E.D.N.Y. Mar. 26, 2010) .............................................................................................................. 14

*Yu .G Ke v. Saigon Grill,* 595 F.Supp.2d 240 (S.D.N.Y. 2008) ................................................... 18

**Statutes**
142.2.6(a)(4) ............................................................................................................................. 10

**Rules**
FED. R. CIV. P. 56(c) ............................................................................................................. 8, 9

**Regulations**
29 C.F.R. § 516.2(a)(7) .......................................................................................................... 11

Defendants The Major Automotive Companies, Inc., Major Universe, Inc., Major Universe, Inc. d/b/a Major World Ford Lincoln Mercury, Major Chevrolet GEO, Major Chevrolet, Inc., Major Chrysler Jeep Dodge, Inc., Major Motors Of Long Island City, Inc. d/b/a Major Kia, Major Motors Of The Five Towns, Inc., Major Automotive Realty Corp., Harold Bendell And Bruce Bendell (the "Major Defendants") submit this memorandum of law in opposition to Plaintiffs Motion For Partial Summary Judgment on liability issues.

## **INTRODUCTION**

Plaintiffs' motion for partial summary judgment on "liability issues" should be denied in its entirety because there is no specific evidence of any specific instances of wage underpayment for any plaintiff.  Nowhere in Plaintiffs' Statement of Undisputed Facts ("PSUF") is there any paragraph which purports to demonstrate a single specific instance of underpayment of compensation.  There is no evidence presented of:

(i)      any specific week when any specific plaintiff was not paid minimum wage;

(ii)     any specific car sale where any specific claims commissions were improperly reduced by improper deductions;

(iii)    any evidence of any specific week when a specific plaintiffs worked overtime and any approximation of hours;

(iv)    any specific commission sale by any plaintiff where an auction fee was deducted where any plaintiff claims that the car was not purchased at auction;

(v)     any specific instance where a commission on a specific car sale by a specific plaintiff was improperly calculated or paid.

1

Plaintiffs cannot carry their burden of proof on any of <u>their</u> claims in their motion. Plaintiffs are thus actually seeking an advisory opinion of the Court as to whether under certain factual circumstances, an unspecified plaintiff was owed overtime during some unspecified work weeks and was underpaid commission with respect to unspecified car sales because of unspecified improperly calculated formulas for arriving at the commissionable basis. Accordingly, the partial summary judgment on liability issues sought by plaintiffs asks for an impermissible advisory opinion and must be denied on that ground alone.

Plaintiffs' motion is on its face outrageous and incredible given the annual compensation levels of the plaintiffs.  Specifically, plaintiff Karic had an average biweekly pay of $1,825 and made approximately $47,462 a year. Similarly, plaintiff Stanic earned an average by weekly pay of $1853 and made around $48,179 per year. Plaintiff Garcia had an average biweekly pay of approximately $1,185 and made approximately $30,812 a year.  For the ten paychecks to plaintiff Jones received, he earned on average $1125.41 every other week.  In addition to never earning only the $200 base pay, plaintiff Colon earned an average biweekly pay of $1482, or approximately a $38,531 a year. Plaintiff Zivanovic was the strongest earner, taking in on the average $2147 every other week, or approximately $55,819 per year.  *See* Sq. Decl. Ex. A, copies of Plaintiffs' biweekly paycheck data maintained on the Arkona system.

Plaintiffs' motion must be denied on other grounds as well as set forth herein.  There is evidence in defendants' favor contradicting and/or materially undermining plaintiff's anecdotal evidence of the terms of the commission formula and plaintiffs' entitlement to overtime.  Similar evidence in other cases have precluded a grant of summary judgment in employees' favor. Likewise here plaintiffs' summary judgment should be denied in its entirety.

## SUMMARY OF ARGUMENT

The motion has been brought on behalf of the seven named plaintiffs.  All seek partial summary judgment on the Major Defendants' liability to them for wages they claim were not paid for various reasons.  As a group, all plaintiffs seek a judgment that:

1.     Major Automotive is engaged in interstate commerce.  Pltfs.' Mem. of Law pg. 3. That fact and conclusion of law is conceded by defendants.

2.     Defendants are a single integrated employer for purposes of liability to plaintiffs for their unpaid wages.  Pltfs. Mem. of Law at pg. 3.  This point is conceded for purposes of this motion only.

3.     Defendants failed to pay plaintiffs' minimum wages or overtime.  Pltfs. Mem. of Law at pgs. 5-6.  Defendants agree that in the weeks when no commission was paid the $20 per day salary would not equal a minimum wage for any plaintiff who worked more than 40 hours per week in any week when that employee did not receive payment of any commissions. However, no plaintiff has submitted any specific proof of any weeks when he/she did not receive minimum wage for all or any portion of a work week.  Moreover, no plaintiff has submitted any proof that their understanding was other than that the $20 per day plus commissions would be their entire salary for each workweek no matter how many hours worked in any given week.

4.     That Major Defendants' purported failure to keep adequate books and records of hours worked relieves plaintiffs of any obligation to submit any evidence of their hours worked. Plaintiffs have submitted no specific evidence, or even an approximation of the number of hours regularly worked in any workweek nor any evidence of any workweek when they may have worked more than 40 hours per week in any workweek when commission plus salary did not meet minimum wage.   Plaintiffs claim that because the Major Defendants records were

"inaccurate" and/or "inadequate," plaintiffs can rely solely on their own recollection of hours worked. Pltfs. Mem. at pgs. 8-9. Even if Major Defendants' records were inadequate, (which Major Defendants vigorously dispute), plaintiffs cannot rely solely on their "recollection" that they "often worked more than 40 hours per week," because plaintiffs' "recollections" have no credibility in light of contradictory documentary evidence. Moreover, several plaintiffs have not offered <u>any</u> evidence of <u>ever</u> having worked more than 40 hours per week.

5.      Major Defendants have improperly calculated commissions due to plaintiffs on sales of cars. Pltfs. Mem. at pgs. 9-14. According to Plaintiffs, Major failed to calculate their commissions in accordance with the agreement between Major and its sales people. Pltfs. Mem. at 9-10. <u>However, none of the plaintiffs even testified as to what their understanding was an none of the plaintiffs could testify to any specific instance when their commissions were not properly calculated.</u> Plaintiffs' testimony on their understanding of the commission stature is at odds with the undisputed documentary evidence of the commission agreement. <u>The evidence shows that at all times the salesmen commission was calculated according to the detailed commission formula set forth in a collective bargaining agreement negotiated by the unions present at Major.</u> All employees knew the commission formula and all acquiesced in it by accepting it and their commission checks and recap sheets without complaint or request for modification. All salespeople including plaintiffs had access to and could receive copies of commission recap sheets that accompanied every commission payment. Major's commission formula was (1) detailed in writing; (2) available to every salesman whether or not in the union; (3) detailed in every commission recap sheet; (4) almost always accepted without complaint or protest; (5) according to defendants' expert witness (who plaintiffs refused to depose after

defendants made him available) the commission formula comported with custom and usage in the car sales industry.

6.     Plaintiffs seek judgment that under commission formula in effect Major was not allowed to deduct from the commissionable gross (i) set of costs (including a "pack") which was included in the commission formula (Pltfs. Mem. at pg. 11); (ii) "over-allowances"; and (iii) certain additional costs to be included in the commission formula because such costs were included after the purchaser signed the purchase agreement.  Pltfs. Mem. at pg. 13.

7.     Plaintiffs seeks judgment that "charge backs" to plaintiffs were illegal.  Pltfs. Mem. at pgs. 14-16.  No evidence of charge backs however has been submitted.

8.     That individual defendants Harold Bendell and Bruce Bendell are liable as plaintiffs' employers.  Pltfs. Mem. at pgs. 16-18.

9.     That the Major Defendants' conduct meet all the requirements of willfulness and thus plaintiffs are entitled to liquidated damages and a three year statute of limitations.  Pltfs. Mem. at pgs. 18-20.

10.     Plaintiffs also have failed to establish the timeliness of all claims.  The claims were first filed in December, 2009.  The FLSA limitation period is 2 years but may be 3 years if plaintiffs can prove willfulness.  Even assuming such proof, no plaintiff can assert any claims occurring before December 2006.  Thus, Ms. Garcia's claims for her employment before 2007 are time barred.  PSUF 16.  Danny Colon's claims accruing before 2007 are time barred as well. PSUF 17.  Karic's claims accruing before 2007 are time barred.  PSUF 18.  Zivanovic's claims are time barred if they accrued before 2007.  PSUF 22.  William Chatham's claims are time barred if they accrued before 2007.  PSUF 20.  Most of Stanic's claims are time barred as they accrued before December, 2007.  PSUF 21.

Defendants dispute, and have submitted persuasive, admissible, credible evidence to preclude summary judgment on issues identified by plaintiffs as described above.  At the very least, there are questions of fact that cannot be determined on a motion of summary judgment.

## STATEMENT OF FACTS

**A.      Plaintiffs Were All Salespeople Who Were Paid An Agreed Salary Consisting Of A Per Diem Amount Plus Commission For All Hours Worked**

All of the pay plans and commission formula schedules make it clear that a salesperson's compensation is intended to be for all hours worked whether or not a salesperson works more than 40 hours per week or less than 40 hours per week.

**B.      Car Sales Commission Were All Governed By The Same Detailed Formula That Was Known To And Accepted By All Plaintiffs; All Of The So-Called "Illegal Deductions" Were Part Of The Commission Formula Agreed To And Accepted By All Plaintiffs**

The commission structure at Major resulted from bargaining between Major and the union. Although only Major Chevrolet employees were eligible for union membership, all major employees benefited from the Union's collective bargaining, and the resulting commission structure. *See* Sq. Decl. Ex. B, Bendell Tr. 88:21-89:12. Eric Keltz, Major Defendants' general counsel testified that pages of the collective bargaining agreement were given to all employees. *See* Sq. Decl. Ex. C, Keltz Dep. Tr. 32:13-33:3.

That agreement reflected the commission formula that applied to all Major car salespersons. The pay plan documents were only summaries which did not contain all terms of the formula. *See* Sq. Decl. Ex.C, Keltz Tr. 21:2-24:17, 74:4-18. Whenever salespersons were paid a commission, a commission recap sheet accompanied, or was made available, with each commission check. *See* Sq. Decl. Ex. D, Garcia Tr. 89:22-90:10. Salespersons were also given access to vehicle information sheets that contained the underlying data, including cost and sales price, of every vehicle sold. *Id.*, Garcia Tr. 88:2-24. Thus each pay period when commissions were paid, each salesperson knew how the formula arrived at the amount of the commission. Not one plaintiff could recall any *specific* commission sale for which he/she complained that the

commission had been improperly calculated. Moreover, some plaintiffs admitted that they had no complaints regarding the method that commissions were calculated until after vehicle sales slowed following the economic downturn in 2008. *See,* Sq. Decl. Exs. D, Garcia Tr. 45:11-16; E, Karic Tr. 12:9-22; F, Chatman Tr., 25:9-12.

There are many variables which go into the commission formula. *See* Sq. Decl. Ex. G, Cottrell Tr. 14:12-16-2. Used cars purchased by Major at auction have different input variables for commission purposes than used cars taken as trade-ins by Major. *See* Ex. C, Keltz Tr. at 67:4-10. Input variables change depending on the amount of repair that is required to make the vehicle road worthy before it is sold. Used vehicles which are returned to Major for repair shortly after sale have a different set of commission variables. *See Id,* Keltz Dep. at 36:7-13. Commission variables also depend on the type of financing available to, and selected by the purchaser. Sq. Decl. Ex. B, Harold Bendell Dep. at 166:9-167:21. Major's compensation practices and commission formula are within the industry standards. The commission formula is complicated because the used car business is complicated. *See* Sq. Decl. Ex. H, Expert Report.

These complicated and numerous variables for the commission formula coupled with individual issues regarding each salesperson's individual understandings and agreements on the commission formula and structure and the individual issues regarding plaintiffs' agreement to accept the per diem and commission for all hours worked overwhelm any common issues.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARDS

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The burden

8

of demonstrating that no material fact exists lies with the party seeking summary judgment. *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted). In deciding such a motion, the court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir. 2000) (citation omitted). If, however, the opposing party fails to make a showing of an essential element of its case for which it bears the burden of proof, summary judgment will be granted. *Celotex,* 477 U.S. at 323.

To overcome a motion for summary judgment, the opposing party must show that there is an issue of material fact that is in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). That is, the disputed fact must be one which "might affect the outcome of the suit under the governing law." *Id.* at 248. A fact issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[N]onmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys,* 426 F.3d at 554 (citations and internal quotation marks omitted). If the opposing party does not set forth specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. FED. R. CIV. P. 56(c).

## II.   PLAINTIFFS HAVE FAILED TO PROVIDE EVIDENCE OF A PRIMA FACIE CASE FOR PAYMENT OF (1) MINIMUM WAGE OR (2) OVERTIME OR (3) ANY UNPAID COMMISSIONS

An employee who sues for overtime or other compensation claims under FLSA bears the burden of proving that an employer did not properly compensate him. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946). Even if (as certain plaintiffs claim) their hours worked were not properly recorded, a plaintiff still maintains a burden of proof of establishing:

9

> ". . . that he has in fact performed work for which he was
> improperly compensated."

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

Plaintiffs have failed to identify any specific weeks when they were paid less than minimum wage. Rather, plaintiffs have established that their agreement with Defendants provided for a fixed per diem amount plus commission for all hours worked in any given week regardless of the number of hours. *See* PSUF, ¶ 48. All plaintiffs understood and accepted that the compensation at Major was fixed and was intended to be the salespersons total compensation for all hours worked. *See* Sq. Decl. Ex. C, Keltz Tr. 32:13-33:5. Salespersons had no set number of hours they had to work each work week. Nor was there a quota of cars they had to sell. Not one plaintiff testified to a single instance when they complained about not being paid overtime. Thus, to the extent that any Plaintiff worked more than 40 hours in any given week, and earned no commission or too little commission to cover the overtime wage requirements (applicable at the time of payment), they are not entitled to recovery from Defendants.

Some plaintiffs offered no testimony or any other evidence. *See* PSUF 47 (omitting any evidence from plaintiffs Karic, Stanic, Zivanovic). With respect to plaintiffs Garcia, Colon and Jones each offers only a conclusory statement. *See* PSUF 47. Such scant, unreliable evidence hardly constitutes prima facie proof.

## III. MAJOR DEFENDANTS KEPT SUFFICIENT BOOKS AND RECORDS TO PRECLUDE PLAINTIFFS FROM RELYING SOLELY ON THEIR GENERALIZED RECOLLECTIONS THAT THEY "OFTEN WORKED OVERTIME"

Under 12 NYLL 142.2.6(a)(4) an employer is required to keep weekly payroll records which show "the number of hours worked daily and weekly." Similarly the FLSA requires that

10

employers maintain records of "hours worked each workday and total hours worked each workweek."  29 C.F.R. § 516.2(a)(7).

Plaintiffs' "evidence" that Major failed to keep accurate and adequate records consists only of plaintiffs Zivanovic's deposition testimony that "sometimes the time clock was not working."  PSUF 45, Ex. G; Cottrells' Tr. 29:15-19. (time clock was used "on and off"), Ex. I, Stanic Tr. 38:2-18 (vague testimony that [unidentified] managers told him not to punch out.")

Major's payroll records are far more detailed and reliable than the type of "inadequate" or "inaccurate" payroll records that have been held to allow employees to rely solely on their recollection to prove their overtime claims.  *See e.g. Berrio v. Nicholas Zilo Racing Stable, Inc.*, 849 F. Supp. 2d 272 (E.D.N.Y. 2012) (evidence shows that defendant "did not have system in place for monitoring the hours worked by its employees"; supervisor testified that "he did not keep any record of when [employees] arrived and left"; "payroll records merely indicate employee's name and amount paid to that individual each week"); *Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 389 (E.D.N.Y. 2007) (apply lesser standard where the time sheets contained only the employees names and amount paid that week).  Indeed, Major maintains extensive time clock records and/or time logs of all of its employees, including salespersons. Admittedly, some of the "punch detail" is incomplete due to salespersons' failure to utilize the clock appropriately. However, those electronic records are supplemented are supplemented with time logs that are completed manually, and they can be verified with what limited punch detail exists. *See* Ex. J. Accordingly, plaintiffs have failed to demonstrate sufficient facts to entitle them to rely solely on their recollection to satisfy their prima facie burden.

## IV.    PLAINTIFFS' QUESTIONABLE CREDIBILITY PRECLUDES SUMMARY JUDGMENT

Plaintiffs seek a declaratory ruling that their recollection of the hours they have worked is controlling.  They are not entitled to one.  Their severe credibility problems are evident from their contradictory sworn statements.  *See* Sq. Decl. Ex. K Chart of Plaintiffs' Deposition Testimony Changes.  "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003).

While it's true Major Automotive' s time records are not perfect, they are not deficient. To the extent that employees properly utilized the available time clock, a computer generated "punch detail" exists, and is reflective of their hours worked. See, e.g., Ex. J.[1] For example, Claribel Garcia has provided a declaration swearing that she worked six days per week and twelve hours per day. Garcia Decl., ¶3.  The documentary evidence contradicts her.  A punch detail report detailing her hours from March 26, 2006 through April 8, 2006 reveals that she only worked a total of 68.40 hours during a 14-day period. *See* Ex. J. Similarly, Major's log-in sheet for April 20, 2008 through April 26, 2008 reflects only a 4-day work week, with a total of 31.23 hours worked once for lunch breaks (one of which lasted for nearly 2 hours) are factored in.  *Id.* Here, both the punch detail and the log-in sheet (representing weeks worked more than two years apart) clearly establish Claribel Garcia was not in attendance for six days a week *or* 12 hours a day as she has testified.

---

[1]      It should be noted that employees regularly punched in upon arriving at Major Auto.  To the extent the time clock records are unreliable it is because Plaintiffs did not punch out when they left or took breaks. Thus, any date reflected in the punch detail as "unscheduled" and lacking any "in" or "out" time accurately reflect a day off.

Similarly, the documentary evidence contradicts Karic's "recollection" of the days and hours worked.  Slobodan Karic testified in his deposition that he worked approximately six days per week and 12 hours per day. Ex. E, Karic Tr., 123:12-124:4. Yet, looking at the available time clock data and log-in sheets, that is clearly inaccurate. For example, from July 27 through August 9, 2008, Karic worked only 10 days, not 12. *See,* Ex. J. Additionally, during the same time period, Karic's average number of hours worked per day were 9.9, not 12 (considering only the eight days where punch-out detail was available, and not factoring in any time for lunch). *Id.* Similarly, according to the log-in sheet for April 6 through April 12, 2008, Karic's average number of hours worked per day, including lunch breaks, was 7.6, not 12. *Id.* For that week in April of 2008, the log-in sheet indicates that Karic worked a total of 45.6 hours. *Id.* The punched detail for June 15 through June 28, 2008 (a two-week period and that includes punch-in punch-out data for everyday worked), Karic work to total of 110.53 hours, or approximately 55.25 hours per week, not 72.[2]

Even assuming arguendo that Major Defendants' records are deficient, plaintiffs' evidence does not allow for a just and reasonable inference.  When an employer's records are inadequate, an employee may meet her burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Rivera v. Ndola Pharmacy Corp.,* 497 F.Supp.2d 381, 388 (E.D.N.Y. 2007) (interpreting New York law (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687(1946)) which in certain cases "a plaintiff may meet this burden solely through her own recollection," (*Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (citations omitted)).  Still, by merely providing

---

[2]     Similar discrepancies exist for Plaintiffs Chatman, Colon, Stanic, and Zivanovic. Plaintiffs Steven Jones was the only one accurately recall of 45 to 50 hour work week in his deposition.

13

implausible, self-serving testimony contradicted by documentary evidence, plaintiffs do not relieve the Court of its authority to determine credibility on a summary judgment motion. "The finder of fact must ultimately determine whether a plaintiff's recollections…are credible enough to provide the Court with a reasonable estimate as to the number of hours that plaintiff worked. *Vasquez v. Ranieri Cheese Corp.*, 07-CV-464-ENV-VVP, 2010 WL 1223606 (E.D.N.Y. Mar. 26, 2010).[3]

Thus, based solely on Plaintiffs' "recollection," in the face of contradictory documentary evidence, the Court is not bound to accept Plaintiffs' position at face value.  Given the discrepancies between the reasonable inferences drawn from those records versus the averages provided by Plaintiffs, it is improper to hold as a matter of law that Plaintiffs' recollection "controls."  Summary judgment on overtime should therefore be denied.

## V.      PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ANY ISSUE OR  ELEMENT OF THEIR CLAIMS FOR COMMISSIONS WOULD

Plaintiffs' Point VII seeks summary judgment on the issue of commissions generally but there is no specific evidence to support that application.  Plaintiffs contend that there were two "pay plans" in use at Major.  However, not one plaintiff has provided any consistent testimony as to which, if any, of the two pay plans he/she agreed to with Major.  In fact the testimony of the plaintiffs' themselves reveals that not one of them can offer clear, consistent testimony of the

---

[3]      Indeed, even taking Plaintiffs' testimony at face value, their "recollection" lacks the detail necessary to determine the average number of hours worked per day. For example, plaintiffs took daily lunch breaks (sometimes for close to 2 hours). Assuming those lunch breaks removed plaintiffs from the floor, and they were able to enjoy a stretch of time uninterrupted by customers, they are not entitled to pay during those breaks. *See Mendez v. Radec Corp.*, 232 F.R.D. 78, 84 (W.D.N.Y. 2005).

"pay plan" supposedly agreed with Major.   *See* Sq. Decl. Ex. K, Summary of Plaintiffs'
Deposition Testimony on calculation of commissions.

New York's Court of Appeals has made it crystal clear that whether charges made to
determine an employee's final commission are legal depends on when the commission was
"earned" and became a "wage" under Section 193.   *Pachter v. Bernard Hodes Group, Inc.*, 10
N.Y. 3d 609, 617, 861 NYS 2d 246 (2008).   That in turn, depends on the agreement between the
parties.   Parties "may provide that the computation of a commission will include certain
downward adjustment from gross sales, billings or receivables.   In that event, the commission
will not be deemed "earned" or vested until computation of the agreed upon formula."   *Id.* at
617-618.

Plaintiffs agreement with and acceptance of the established commission terms used by
Major to calculate their commission checks is admitted by plaintiffs Garcia, Jones, Karic and
Chatman, none of whom submitted any evidence complained they were not receiving correct
commissions.   *See* PSUF 55,   With respect to the plaintiffs who do contend they "often
complained that they were not receiving the correct commissions", *i.e.* Colon, Stanic, Zivanovic,
none have offered a single specific instance of commission underpayment and non-have
described how and what underpayment occurred and the manner in which the commission was
improperly calculated.   Major Defendants' executive Harold Bendell testified he had no
knowledge of salesman's complaints on commissions.   *See* Sq. Decl. Ex. B, Bendell Tr67:24-
68:3.  In fact, in its sections of the PSUF titled "Major Automotive Impossibly Added Multiple
Packs to Deals" (PSUF 56-62); "Major Automotive Miscalculated Plaintiffs' Commissions By
Applying Over-Allowances To Deals," (PSUF 63-66)'; "Major Automotive Miscalculated Sales
Presentations Commissions Through Additional Costs" (PSUF 68-70) not one plaintiff offers

any testimony to make even a prima facie case that such formulations are contrary to the parties' understanding of the commission agreements, as they  understood it.

The evidence that plaintiffs were illegally charged back is equally deficient.  Only plaintiffs Jones, Garcia, and Chatham offer contention of illegal chargebacks.  PSUF 76.  None provide any evidence.

Defendants and Plaintiffs differ as to whether there is a specific written contract which governs the commission calculation agreement.  Plaintiffs contend it is only the Pay Plans, defendants contend it is the entirety of the Pay Plan documents and formula sheet from the collective bargaining agreement.  *See* Sq. Decl. Ex. C, Keltz Tr. 32-33.  The parties differ also on what the various writings mean.  Major Defendants' interpretation is that "commission gross" means Major's "profit on the vehicle."  Sq. Decl. Ex. B, Bendell, Tr. 57:17-20; Ex. G, Cottrell Dep. 12:22-25.  However, here as in *Pachter* "the lack of a specific written contract is not determinative because the record in this case [as in the instance case] the evidence of the parties' extensive course of dealings . . . and the written monthly compensation statements issued by *Hodes* and accepted by *Pachter* provide ample support for the conclusion that there was an implied contract under which the final computation of commissions earned . . . depended on first making adjustments" *Id*. at 618.  Accordingly, the Court of Appeals held:

> We therefore conclude that neither Section 193 nor any other provision of Article 6 of the Labor Law prevented the parties in this case from structuring the compensation formula so that *Pachter's* commission would be earned only after specific deductions were taken from her percentage of gross billings and that . . . when a commission is "earned" and becomes a "wage" for the purposes of Labor Law Article 6 is regulated by the parties expenses or consented agreement.

New York's Appellate Division has repeatedly held that employment contracts for commissions did not preclude the reduction of an employee's commission where the agreement

16

gave the employer the right to modify the commission structure.  *See e.g. Cuervo v. Opera Solutions, LLC*, 87 A.D. 3d 426, 928 N.Y.S. 2d 26 (1st Dept. 2011) (integrity NYLL 193).  In *Arbeeney v., Kennedy Executive Search Inc.*, 71 A.D. 3d 177, 839 NYS 2d 39 (1st Dept. 2010), the First Department upheld the employer's unilateral reduction of an employee's compensation where the agreement between the parties allowed the employer to exercise its discretions in reducing compensation.  In *Chenesky v. New York Life Inc. Co.*, (S.D.N.Y. 2012), 2012 WL 234374 (Jan. 10, 2012), Judge Pauley held that in a case involving NYLL 193 and commissions summary judgment could not be granted where the parties submitted conflicting evidence as to when a commission was earned and therefore the question of whether certain deductions were illegal was also a question for the fact finder and could not be resolved on summary judgment.  *See also Gold v. New York Life Ins.*, (S.D.N.Y. 2011) 2011 WL 2421281 (May 19, 2011)( J. Pauley) (denying summary judgment based on conflicting evidence of course of conduct and rule in *Pachter*).

The overwhelming evidence points in Major's favor.  <u>First, whenever salespersons were paid a commission, a commission recap sheet accompanied, or was made available, with each commission check.</u>  *See* Sq. Decl. Ex.D, Garcia Tr. 89:22-90:10.  Salespersons were also given access to vehicle information sheets that contained the underlying data, including cost and sales price, of every vehicle sold. *See* Sq. Decl. Ex. D, Garcia Tr. 88:2-24. <u>Week after week, sale after sale, each plaintiff accepted without objections, complaint or request for modification, the commission calculation. In fact, some plaintiffs admitted that they had no complaints regarding the method that commissions were calculated until after vehicle sales slowed following the economic downturn in 2008.</u> *See,* Sq. Decl. Exs. D, Garcia Tr. 45:11-16;  E, Karic Tr. 12:9-22; F, Chatman Tr., 25:9-12.

There is no dispute that each commission recap calculated commissions on a consistent basis, calculating Major's profit after deducting all costs to arrive at a "profit" number from which commission was calculated, *See* Sq. Decl. Ex. B, Bendell Tr. at 62, and deducting from the sales price any applicable cost that was within the scope of the agreement. *See* Keltz Tr. 82; Bendell Tr. 95. Under the applicable authorities, plaintiff's individual acceptance of the commission calculations, uniform with each sale and open calculated for each sale before payment of the commission constitutes a course of conduct agreement under the law which compels denial of plaintiffs' motion for summary judgment on the commissions' issues.

## VI.    LIQUIDATED DAMAGES AND WILLFULNESS

Plaintiffs are not entitled to liquidated damages, primarily because they have yet to establish liability for any violation of the FLSA or NYLL. Indeed, it would be impossible at this point for defendants to meet their burden of demonstrating "subject of good faith and objective reasonableness" for activities that have yet to be established.

Willfulness "is generally understood to refer to conduct that is not merely negligent." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). Under this standard, conduct is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id.; see also Kuebel,* 643 F.3d at 366; *Saigon Grill,* 595 F.Supp.2d at 258 (citing *McLaughlin,* 486 U.S. at 133). The test for willfulness under the NYLL is whether the employer "knowingly, deliberately, or voluntarily disregard[ed] its obligation to pay wages." *See Moon v. Kwon,* 248 F.Supp.2d 201, 235 (S.D.N.Y. 2002). There is no material difference between the FLSA and NYLL standard for willfulness. *See Yu .G Ke v. Saigon Grill,* 595 F.Supp.2d 240, 261 (S.D.N.Y. 2008) (citing *Moon,* 248 F.Supp.2d at 235); *see also Kuebel,* 643 F.3d at 366 (finding that district court "reasonably concluded ... that the NYLL's willfulness

18

standard does not appreciably differ from the FLSA's willfulness standard") (internal quotation marks and citation omitted).

On a motion for summary judgment, the burden is on the plaintiff to come forward with evidence that the defendants willfully violated the law. *See Azkour v. Little Rest Twelve,* No. 10-CV-4132, 2012 WL 402049, at *3 n. 1 (S.D.N.Y. Feb., 7, 2012). The plaintiffs' allegation of willfulness is disputed, Answer ¶ 25, and "[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact." *Ramirez v. Rifkin,* 568 F.Supp.2d 262, 268 (E.D.N.Y. 2008) (citing cases); *see also Kaur v. Royal Arcadia Palace, Inc.,* 643 F.Supp.2d 276, 294–95 (E.D.N.Y. 2007) (declining to enter summary judgment on the issue of willfulness because it is a "question of fact for the jury").

Plaintiffs argue that Major Auto's violations were willful for essentially the same reasons that they were unreasonable. That is insufficient to meet their burden. *See McLean v. Garage Mgmt. Corp.*, 10 CIV. 3950 DLC, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012). Primarily, Plaintiffs rely on the fact that in 2006 and 2008 the NYDOL investigated Major Automotive for wage violations, and ultimately fined Defendants following both investigations. Def. Br, 22. Plaintiffs imply that no efforts were made, following the NYDOL investigation, to bring the dealership practices in line with the law. However, that was not the case. Following the 2006 complaint by the NYDOL, Major Automotive engaged outside counsel for guidance concerning applicable employment laws. *See* Keltz Tr. 29:23-30:14. While this type of reliance does not necessarily mean the burden of establishing good faith, it does demonstrate a lack of willfulness. *See Mclean*, 2012 WL 1358739 at * 8; *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 318 (S.D.N.Y. 2011) (Here, a reasonably jury could examine defendants' consultations with

an accountant, the specific contents of which are not in the record, and come to the conclusion that defendants' violations are not willful.").

The determinative factor in evaluating willfulness is whether the employer knew that the *Plaintiffs* were not being paid enough to account for time actually worked, or commissions actually earned. First, with respect to commissions, Plaintiffs have failed to establish that commissions were being paid in violation of NYLL. Moreover, all evidence points to the facts that Defendants believed they were acting in accordance with the law and the pay plan in calculating commissions and inventory sold. *See* Sq. Decl. Ex. C, Keltz Tr. at 30-31 (Major changed policies after Department of Labor complained); 28 (Major personnel had payroll compliance training at Greater New York Auto Dealers Ass'n), Bendell, H. at 63-64 unaware of any employees making complaints about commissions or payroll. With respect to minimum wage and overtime Plaintiffs have failed to establish (a) that the named plaintiffs indeed were not earning enough to cover minimum wage and overtime; and (b) if they were not, that Defendants were ever made aware that fact. Indeed, a cursory review of Plaintiffs' paycheck data reveals that, on average, they were being paid $1,000 - $2,000 (many times much more, and sometimes less) every other week. Sq. Decl., Ex. A. Assuming a 55 hour work week (a far more realistic assumption, as opposed to the incredible testimony of Plaintiffs), minimum wage plus overtime would only be about $894. Thus, beyond the two very narrow NYDOL investigations, regarding employees not party to this action, defendants were on no notice that their sales persons, including Plaintiffs, were not being paid in accordance with the law, if indeed that was the case.

## VII.   PLAINTIFFS HAVE NOT ESTABLISHED A SINGLE  IMPROPER "CHARGE BACK"

In their unlawful deductions point ("VIII," Plaintiffs Mem. at 14-16), plaintiffs invoke New York Labor Law § 193 for the proposition that the "charge backs" are per se illegal because

they were outside the enumerated deductions under § 193 <u>and</u> were made after the commissions were earned.  Pltfs. Mem. at 14-15.  Plaintiffs' arguments are unavailing because here, as in *Jankousky v. North Fork Bancorporation, Inc.*, No. 08-cv-1858, 2011 WL 1118602 (S.D.N.Y. Mar. 23, 2011) (S.D.N.Y. 2011) question is not deductions but wages and as in *Jankousky* summary judgment must be denied:

> The dispute here deals with what are *Jankousky's* 2006 wages. The parties have different views on how wages should be calculated.  This type of dispute does not fall within NYLL § 193(1), which covers only deductions from agreed upon wages. Until wages are agreed upon, there can be no deductions within the meaning of the NYLL.  Since the NYLL has not been breached, there is not right to liquidated damages.

*Id.* at *4.

With this branch of their summary judgment motion, plaintiffs again seek an advisory opinion or declaratory judgment.  However, plaintiffs have provided no evidence that any plaintiff who seeks summary judgment on the charge back issue has actually been illegally "charged back" for anything.  There is the bare contention:  "Charge backs were for disciplinary reasons."  Pltfs. Mem. at 15, citing SUF 76.  Plaintiffs offer no evidence of examples or instances of charge backs which they say were illegal.   Instead plaintiffs offer unspecified, general conclusions:  "In some instances charge backs were unrelated to plaintiffs' commission" (Pltfs. Mem. at 14); and "more often than not charge backs occurred in relation to specific vehicles" (Pltfs. Mem. at 15).

## **CONCLUSION**

For all the foregoing reasons, plaintiffs motion should be denied.

Dated: August 5, 2013                    SQUITIERI & FEARON, LLP


                                         By:/s/Lee Squitieri
                                              Lee Squitieri
                                              Garry T. Stevens, Jr.
                                         32 East 57th Street
                                         12th Floor
                                         New York, New York 10022
                                         Tel: 212-421-6492
                                         Fax: 212-421-6553
                                         lee@sfclasslaw.com
                                         garry@sfclasslaw.com

                                         ***Attorneys for Major Automotive Defendants***
                                         ***(Excluding Chris Orsaris)***

22