UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 16 2014 ★

BROOKLYN OFFICE

------------------------------------------------------------x

SLOBODAN KARIC, CLARIBEL GARCIA, :
STEVEN JONES, GORAN STANIC, :
LJUBOMIR ZIVANOVIC, DANIEL COLON :
AND WILLIAM CHATMAN, on behalf of :
themselves and all others similarly situated, :
                        :
            Plaintiffs, :
                        :
      -against- :
                        :
THE MAJOR AUTOMOTIVE COMPANIES :
INC, HAROLD BENDELL, BRUCE :
BENDELL, CHRIS ORSARIS, et. al :
                        :
           Defendants. :

------------------------------------------------------------x

**MEMORANDUM & ORDER**

09-cv-5708 (ENV) (CLP)

VITALIANO, D.J.,

      Plaintiffs, current and former car salesmen employed by The Major

Automotive Company ("Major") and affiliated entities, bring suit on behalf of

themselves and others similarly situated against Major and three individual

defendants, Bruce Bendell, Harold Bendell, and Christopher Orsaris, alleging

various unfair labor practices. In particular, plaintiffs allege that defendants

violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the

New York Labor Law ("NYLL") by failing to pay sales representatives proper

minimum wage and overtime compensation, and by taking impermissible

deductions from wages and commissions. By Order dated July 20, 2011, the Court

conditionally certified this as a collective action, pursuant to § 216(b) of FLSA. The

parties have now completed discovery. On September 11, 2013, plaintiffs moved for

1

partial summary judgment. Specifically, plaintiffs sought summary judgment on liability (but not damages) with respect to Counts One through Three (minimum wage and overtime) and Counts Five and Six (unpaid commissions and unlawful deductions from wages). Additionally, plaintiffs moved for summary judgment on defendants' affirmative defense that their violations of FLSA were made in good faith, and on the issue of joint and several liability of Bruce Bendell and Harold Bendell. Finally, plaintiffs sought summary judgment on their entitlement to liquidated damages under both FLSA and NYLL. However, during the pendency of this motion, the parties settled all FLSA claims, leaving only the NYLL claims remaining for the Court's disposition. For the reasons discussed below the Court grants the balance of plaintiffs' summary judgment motion.

<u>Background</u>

Major is a holding company for a group of automobile dealerships and allied companies, including Major Chevrolet, Major Chrysler Jeep Dodge, Major Kia, Major Fleet and Leasing, Major Geo and Major Ford Lincoln Mercury, all located in Queens. (Defendants' Response to Plaintiffs' Rule 56.1 Statement ("Response"), ¶ 1.) Individual defendants Bruce Bendell and Harold Bendell were the Chairman/Chief Executive Officer and the President, respectively, of Major during the class period, which runs from December 30, 2006 to the date of the filing of this action, December 30, 2009 (the "class period"). (Id. at ¶¶ 3-10.)

Plaintiffs are individuals who were employed as sales representatives at various Major car dealerships during the class period. In addition to the named plaintiffs, there were, during the class period, approximately 80 sales

2

representatives working for Major at any given time, and around 150 sales representatives in total. (Am. Compl. ¶5, Response, ¶ 28.) All of these sales representatives performed essentially the same job duties and were subject to the same basic compensation structure. Specifically, they were paid $20 per day plus a commission on any car that they sold, minus certain deductions that Major took out of paychecks, purportedly for costs associated with a given sale. (Response, ¶¶ 33-37.) Sales representatives generally worked 45-55 hours per week and were subject to the $20 per day salary plus commission structure regardless of the number of cars sold in a given day. In other words, if a sales representative worked a five-day week and failed to sell a single car, he would receive $100 in salary that week regardless of the number of hours worked. (Response, ¶ 51.) Plaintiffs claim that this salary structure violated NYLL because, on days when plaintiffs failed to earn a penny in commission, plaintiffs received less than minimum wage.[1] Plaintiffs also allege that defendants improperly deducted monies from their commissions by disguising the deductions as costs associated with the sales upon which the commissions were earned, in violation of NYLL's provisions regulating adjustments to commissions and permissible deductions from earned wages.

<u>Standard for Summary Judgment</u>

Pursuant to Rule 56, a federal district court must grant summary judgment upon motion and finding, based on the pleadings, depositions, interrogatory

---

[1]  Minimum wage in New York varied during the class period from $5.15 to $7.25, which comes out to approximately $41.20 to $58.00 per day, assuming an eight-hour workday. Accordingly, minimum wage assuming a 40 hour workweek ranged from $206 to $290 during the class period.

answers, admissions, affidavits, and all other admissible evidence that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Feingold v. New York</u>, 366 F.3d 138, 148 (2d Cir. 2004). In determining whether the moving party has met this burden, a court must construe all evidence in a light most favorable to the nonmoving party, resolving all ambiguities and inferences in its favor. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); <u>Gibbs-Alfano v. Burton</u>, 281 F.3d 12, 18 (2d Cir. 2002). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original); <u>Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.</u>, 302 F.3d 83, 90 (2d Cir. 2002). Material facts are those which, given the substantive law, might affect the suit's outcome. <u>Anderson</u>, 477 U.S. at 248.

If the moving party makes a *prima facie* showing that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and put forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>Davis v. New York</u>, 316 F.3d 93, 100 (2d Cir. 2002). In so doing, the

4

nonmoving party may not rely on conclusory allegations or speculation. <u>Golden</u> <u>Pac. Bancorp v. FDIC</u>, 375 F.3d 196, 200 (2d Cir. 2004) (citing <u>D'Amico v. City of</u> <u>New York</u>, 132 F.3d 145, 149 (2d Cir.1998)); Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Thus, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Jeffreys v. City of New</u> <u>York</u>, 426 F.3d 549, 554 (2d Cir. 2005) (quoting <u>Matsushita</u>, 475 U.S. at 586). Nonetheless, the nonmoving party need not make a compelling showing; it need merely show that reasonable minds could differ as to the import of the proffered evidence. <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54, 59 (2d Cir. 1997)

<u>Analysis</u>

**I. <u>NYLL Minimum Wage and Overtime Claims</u>**

New York law requires that employers pay "minimum and overtime wage . . . for each week of work, regardless of the frequency of payment, whether the wage is on a commission, bonus, etc." 12 NYCRR § 142-2.9 (2014). In addition, NYLL requires that "an employer shall pay an employee for overtime at a wage rate of one and one-half times" the minimum wage for all hours worked in excess of 40 hours per week. 12 NYCRR § 142-2.2 (2014). In 2010, the New York Department of Labor ("NYDOL") clarified that, "commissions earned by an employee during subsequent weeks within a settlement/pay period may not be used to satisfy the

5

employer's minimum wage and overtime payments to the employee." Maria L. Colavito, <u>Request for Opinion Automotive Salespersons</u>, RO-09-0177, Feb. 25, 2010. This memorandum further states, in relevant part:

> [C]onsider an automotive salesman who is paid on a commission-only basis with settlement occurring at the end of each month. Should he fail to sell any cars for the first three weeks of the month despite working 40 hours per week . . . but sell five cars earning him $5,000 in commission in the last week, the commission earned during the last week could not be used to satisfy the employer's obligation in the first week.

*Id.*

Powerfully, defendants concede "that the average number of hours worked per week generally range[d] from 45 to 55 hours, . . . [that] there were periods where sales representatives did not earn commission and received only $20.00 per day, . . . [and, that] there were weeks where plaintiffs did not earn a commission." (Response, ¶ 48-51.) Indeed, defendants admit that weeks in which plaintiffs received no commission and, therefore, earned just $100 were a "regular practice." (Id.) Defendants, nonetheless, do not concede liability. They seek to avoid it by pointing out that, when viewed annually, plaintiffs earned on average $40,000-$50,000, that is, substantially more than a minimum wage employee would earn in a year. The annual salary pitch is a red herring.

As discussed above, NYLL indisputably requires that employers pay employees minimum wage and overtime on a <u>weekly</u> basis, regardless of whether those employees earn commission in subsequent weeks. Any argument then, as defendants advance, based on salary annualization is wholly unavailing. As a

sidebar, it is notable that defendants were investigated by NYDOL in 2006 and 2008—in response to a complaint from one of their employees—and were found to have violated New York's overtime laws. (Def. Ex. AA.) The Court's conclusion here, consistent with the conclusion reached by NYDOL, that defendants have violated NYLL's minimum wage and overtime requirements, must come without surprise. All that remains is the computation of damages.

## II. Unpaid Commissions Claim

It is undisputed, as related earlier, that New York law requires that "[a] commission salesperson shall be paid . . . commissions and all other monies earned or payable in accordance with the agreed terms of employment." NYLL § 191(1)(c). Plaintiffs assert that defendants violated this provision by adding "additional packs" or "extra costs" to vehicle sales prices, thereby impermissibly reducing the paid commission in contravention of plaintiffs' employment agreements. Defendants deny it, professing that they always paid plaintiffs the full commission earned on a vehicle sale.

As a fundamental matter, as one might expect, the parties disagree on the proper interpretation of the governing contractual documents. Plaintiffs contend that all salespeople operated under the same basic employment agreement, which provided plaintiffs with a 20% commission on each sale, minus a "pack" expense, which was $275 in connection with the sale of a new vehicle and $950 for a used vehicle. (Pl. Mem. of Law at 10.) According to plaintiffs, this single pack was the only permissible deduction from their commission. Yet, at the root of the dispute,

defendants frequently subtracted, they argue, other extra costs. Defendants admit that they subtracted expenses in addition to the "pack" from commissions, but, nevertheless, claim that such deductions were both permitted under the governing contractual documents and justified by the parties' course of dealing. Specifically, according to the employers, the contractual documents permitted them to subtract "auction expenses" from commissions on certain sales. (Response, at ¶¶ 57-59.) The commission adjustments in issue, they say, were limited to such "auction expenses."

There is a notable gap in the employers' argument. They have cited to no provision in any controlling contract to support an "auction expense" argument, and, indeed, the record evidence is entirely to the contrary. Plaintiffs are party to individual employment agreements and there is also a collective bargaining agreement. The individual and collective contracts are in accord that plaintiffs were entitled to 20% of "front end sales commission." (Fitapelli Decl. Exs. T, U.) The collective bargaining agreement further defines "front end sales commission" to include only adjustments for "(1) commission pack; (2) transportation; (3) open repair orders; and (4) adjustments for market conditions (i.e. fluctuations in gas prices)." <u>Id.</u> There is nothing in any of the agreements that mentions an "auction expense" or any other similar permissible adjustment to commission.

Seemingly in recognition of the futility of their position, defendants argue that the Court should, notwithstanding, deny summary judgment because no salesperson filed a contemporaneous complaint about his or her commissions. According to

defendants, this failure to complain demonstrates that plaintiffs acceded to defendants' compensation practices despite the fact that those practices conflicted with the written contracts. Even if it were true that no salesperson contemporaneously complained—a point that plaintiffs vigorously dispute and is refuted by the NYDOL investigation—a failure to complain does not render defendants' conduct permissible in light of the clear contractual language to the contrary. See, e.g., Dixon v. NBCUniversal Media, LLC, 947 F.Supp. 2d 390, 399-400 (S.D.N.Y. 2013). Indeed, while defendants rely heavily on the Court of Appeals decision in *Patcher v. Bernard Hodes Group*, 10 N.Y.3d 609 (2008) to argue that the parties' history of past dealings should be considered and credited, *Patcher* made plain that such considerations are only appropriate in the *absence* of a written agreement. *Patcher* at 285. Given the unambiguous language on point in the controlling contracts, whether or not plaintiffs accepted the altered compensation arrangement as evidenced by their failure to complain is irrelevant. No provision of the contracts permits such silent unwritten alteration. Silent suffering of a contractual breach certainly does not excuse defendants' failure to live up to their contractual obligations. Accordingly the Court grants summary judgment in favor of plaintiffs on their unpaid commissions claim.

### III. Unpaid Deductions Claim

Plaintiffs next seek summary judgment on their claim that defendants made improper deductions from their wages after those wages were "earned." NYLL restricts an employer's authority to take deductions from an employee's earnings,

providing that an employer may only deduct an amount from an employee's wages if "such deductions are either 'made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency,' or 'expressly authorized in writing by the employee and are for the benefit of the employee.'" Perez v. Westchester Foreign Autos, Inc., at *10 (S.D.N.Y. 2013) (quoting NYLL § 193(1)). Furthermore, "if an employee is paid on a commission basis, New York law permits deductions made before—but not after—the commissions were earned." Id. "The purpose of § 193 is to prohibit employers from making unauthorized deductions from wages [and therefore] to place the risk of loss for such things as damaged, spoiled merchandise, or lost profits on the employer." Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *8 (S.D.N.Y. 2012).

The Major employees are more pointed in their contentions. They claim that their employers had a "company policy" to make "charge-backs" on employee commissions for sundry reasons beyond the contract, including disciplinary measures, damage done to vehicles and mechanical problems. (Pl. Rule 56.1 Statement, ¶¶ 72-79.) They have, more importantly, presented substantial evidence in support of these contentions. Indeed, defendants actually concede that they made deductions from employee wages for disciplinary reasons (Response, ¶ 76) and, further, Harold Bendell—Major Automotive's CEO during the relevant period—testified that it was "company policy" to charge-back plaintiffs for damage to vehicles. (Fitapelli Decl. Ex. C at 114.) Bluntly, such deductions are not contemplated by the plain language of plaintiffs' employment agreements or NYLL

§ 193. They are, therefore, wrongful. See Perez at *11. Dispositively, Major offers no evidence to the contrary; indeed, the lawfulness of these deductions is not even addressed in its briefing. In sum and substance, Major essentially concedes that such charge-backs were made to shift the risk of loss to its employees (Response, ¶ 76), which is precisely what NYLL § 193 was designed to prevent. Summary judgment, as a result, on plaintiffs' unlawful deductions claim is warranted.

## IV. Joint and Several Liability of Bruce and Harold Bendell

In order to find the Bendells jointly and severally liable, the Court must conclude that they were "employers" within the meaning of NYLL. Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011). NYLL's broad definition of an employer includes "any person . . . employing any individual in any occupation, industry, trade, business or service or any individual . . . acting as employer." Irizarry v. Catsimatidis, 722 F.3d 99, 118 (2d Cir. 2013) (citing NYLL § 190(3)). Courts look to a four-factor "economic reality" test to determine whether this definition has been met—namely whether the alleged employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records." Lauria v. Heffernan, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009).

Here, it is undisputed that the Bendell brothers possessed hiring and firing power, set work schedules, determined salaries, issued checks and drafted and signed employment agreements. (Response, ¶¶ 6-10.) Indeed, perhaps in

11

recognition of the futility of their position, defendants do not even address the issue of joint and several liability in their briefing. Whatever damages are determined on these claims, it is clear, the Bendell brothers are jointly and severally liable for them.

## V. Plaintiffs' Entitlement to Liquidated Damages

New York law provides that "if a plaintiff proved that an employer's failure to pay a required wage was *willful*, the plaintiff could recover an additional amount as liquidated damages equal to twenty-five percent of the total wages found to be due him."[2] Gold v. New York Life Ins. Co., 730 F.3d 137, 143 (2d Cir. 2013) (emphasis added). "A violation of the New York Labor Law is willful where the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages." Padilla v. Manlapaz, 643 F. Supp. 2d 302, 313 (E.D.N.Y. 2013). The burden to demonstrate willfulness lies on the claiming employees, although they "need not show malice or bad faith to establish willfulness." Id. Instead, the employees must

---

[2] "Effective November 24, 2009, the statute was amended to impose a presumption of liquidated damages, but permit an employer to avoid the penalty by establishing that it had acted in good faith . . . [t]he amendment expressly stated that it would only apply to offenses committed on or after such effective date." Gold at 143. The alleged offenses in this case spread over a period from 2006 to 2009 with no plaintiff employed past November 2009. (See Ex. M.) The statute was amended again in 2011 "to raise the amount of recoverable liquidated damages from 25% to 100% of any underpayment" but the Second Circuit held that this amendment also was not retroactive. Gold at 143. Because the entire class period occurred prior to November 2009, there is no presumption of liquidated damages and the Court does not need to make a determination regarding a potential affirmative defense of good faith because good faith was not an available affirmative defense during the class period. Id.; Hart v. Rick's Cabaret Intern., Inc., 2013 WL 4822199, at *29 (E.D.N.Y. 2013).

demonstrate the employer's "actual knowledge of a legal requirement, and deliberate disregard of the risk that [they were] in violation." Hart at *29. "Courts in this circuit have generally left the question of willfulness to the trier of fact." Ramirez v. Rikin, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (citation omitted).

Ultimately, there is no genuine issue of material fact here. The record evidence of willfulness is overwhelming. In 2006 NYDOL investigated Major's compensation practices in response to a complaint from one of its salespersons. (Response, ¶ 84.) That state agency concluded that Major had violated New York's minimum wage and overtime compensation laws and ordered it to pay the complaining employee $2,334. (Id. ¶ 85.) Further, it is undisputed that, as part of the 2006 inquiry, NYDOL instructed Major to attend an educational seminar regarding compliance with NYLL but that Major failed to do so. (Id.) In addition, NYDOL audited Major again in 2008 and ordered Major to pay $29,565.18 in back wages based on continued violations of the labor law. (Id. ¶¶ 86-87.) NYDOL's findings do not have estoppel effect, but they speak volumes about Major's "state of mind".

Defendants acknowledge that these investigations put them on notice that they were violating NYLL. The acknowledgment is coupled with the assertion that, in response to the 2006 audit, defendants "engaged outside counsel for guidance concerning applicable employment laws." (Def. Mem. at 19.) However, defendants point to no evidence that they ever received advice of counsel that NYDOL's findings were erroneous and that those policies, which went unaltered, comported with New York law. To the contrary, Major concedes that it continued to engage in

13

the same impermissible employment practices throughout the class period. Persuasively, the fact that defendants consulted legal counsel regarding the propriety of their conduct, cite no advice contrary to NYDOL's findings, and still continued to engage in the same employment practices actually refutes their willfulness affirmative defense. See Padilla at 313 (granting summary judgment on willfulness where "it was [clear] from the record that the defendants had knowledge of the existence of their minimum wage and overtime responsibilities."). Accordingly, the Court grants summary judgment on the issue of defendants' willfulness.

## Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion for summary judgment on all issues that were not resolved by the settlement of the FLSA claims.

The parties are directed to contact Magistrate Judge Cheryl L. Pollak for her continued pretrial management of this action.


     SO ORDERED.

Dated:     Brooklyn, New York
               April 29, 2014

                                           s/Eric N. Vitaliano

                                         ERIC N. VITALIANO
                                         United States District Judge