UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SLOBODAN KARIC, et al.,

                              Plaintiffs,

    - against -

THE MAJOR AUTOMOTIVE COMPANIES,
INC., et al.,

                           Defendants.
-------------------------------------------------------X

**MEMORANDUM
AND ORDER**

09 CV 5708 (CLP)

**POLLAK**, United States Magistrate Judge:

On December 30, 2009, plaintiffs Slobodan Karic, Claribel Garcia, Steven Jones, Goran

Stanic, Ljubomir Zivanovic, Daniel Colon, and William Chatman (collectively, "plaintiffs" and

"named plaintiffs"), commenced this action against The Major Automotive Companies, Inc.[1]

("Major World") and three individual defendants, Bruce Bendell, Harold Bendell, and

Christopher Orsaris (collectively with Major World, "defendants"), alleging violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law

("NYLL"), based on defendants' failure to pay plaintiffs and similarly situated sales

representatives proper minimum wages.  (Am. Compl.[2] ¶¶ 1, 22-23).

---

[1]Defendants include the Major Automotive Companies, Inc., Major Universe, Inc., Major Universe, Inc., d/b/a Major Ford Lincoln Mercury, Major Chevrolet GEO, Major Chevrolet, Inc., Major Chrysler Jeep Dodge, Inc., Major Motors of Long Island City, Inc., d/b/a Major Kia, Major Motors of the Five Towns, Inc., and Major Automotive Realty Corp. (collectively, "Major World").

[2]Citations to "Am. Compl." refer to plaintiffs' First Amended Complaint, filed on February 3, 2011.

On March 7, 2016, the parties consented to transfer jurisdiction over this action to the undersigned. Currently pending before this Court is plaintiffs' motion, on defendants' consent, that requests the following: 1) final approval of the Settlement Agreement and Release that applies to the 89 individuals that opted into the action; 2) certifying the 89 individuals that opted into the action under Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the settlement; 3) approval of service awards; 4) approval of Class Counsel's attorneys' fees and costs, as outlined in the Settlement Agreement; 5) approval of plaintiffs' proposed final settlement procedure; and 6) granting such other, further, or different relief as the Court deems just and proper. (Pls.' Notice[3] at 1-2).

## BACKGROUND

Plaintiffs bring this action on behalf of 89 individuals who opted into the instant matter (the "Class Members"), including the named plaintiffs, who were employed by Major World car dealerships as sales representatives at any time between December 30, 2003 through November 24, 2014 (the "Class" and the "Class Period"). (Set. Agr.[4] §§ 1.6, 1.10). Plaintiffs state that Major World, which operates nine automobile retailers in the New York City Metropolitan Area[5]

---

[3]Citations to "Pls.' Notice" refer to Notice of Plaintiffs' Motion for Final Approval of Class Action Settlement, filed April 7, 2016.

[4]Citations to "Set. Agr." refer to the Joint Stipulation of Settlement and Release filed as Exhibit A to the Declaration of Joseph A. Fitapelli in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Fitapelli Decl."), dated April 7, 2016.

[5]Major World, which also operates Major Fleet and Leasing, the leading supplier of taxis and police cars in New York, is a lessor of trucks, and distributes General Motors vehicles in the former Soviet Union. In addition to selling vehicles, Major World sells replacement parts and provides repair service and maintenance. (Am. Compl. ¶ 3).

(see Am. Compl. ¶ 3), hired plaintiffs and others as new and used vehicles sales representatives. (Pls.' Mem.[6] at 1; Fitapelli Decl. ¶ 5).  Plaintiffs allege that defendants failed to pay employees the correct minimum wage rate, failed to pay plaintiffs the commissions earned in accordance with the agreed upon terms of their employment, made unlawful deductions from plaintiffs' wages, failed to pay employees overtime compensation for hours worked in excess of 40 hours per week, and failed to pay spread-of-hours wages in violation of the FLSA and NYLL.  (Am. Compl. ¶ 1; Fitapelli Decl. ¶ 6).  As a result of defendants' failure to pay plaintiffs their earned commissions, plaintiffs also bring claims of breach of contract, quantum meruit, unjust enrichment, and conversion against defendants.  (See id.)

Since filing the Complaint and Amended Complaint, the parties have engaged in a "highly adversarial litigation," largely because the business practices at issue in the case were considered "industry standard" at the time.  (See Fitapelli Decl. ¶ 9).  The parties have performed extensive discovery, including the production of thousands of documents, an onsite review of defendants' documents, and several depositions.  (Id. ¶¶ 11, 20-21, 34).  The parties have also engaged in significant motion practice, including several discovery disputes involving the insufficiency of defendants' document productions and their responses to plaintiffs' document requests, plaintiffs' motion for conditional certification, plaintiffs' motion for summary judgment, and defendants' motion to strike plaintiffs' class action allegations from the Amended Complaint.  (Id. ¶¶ 14, 57-58, 60-63).

On August 30, 2011, this Court granted plaintiffs' motion for conditional certification

---

[6]Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, dated April 7, 2016.

and approved plaintiffs' proposed collective notice, which was sent to potential collective members on September 12, 2011. (Id. ¶ 36). On May 29, 2012, the parties requested that the Court issue a 60 day stay in order to allow the parties to discuss a possible settlement. (Id. ¶ 51). The next day, the Court granted this request. However, the parties were unable to reach a settlement during the stay, and on December 14, 2012, plaintiffs requested a pre-motion conference before the Honorable Eric N. Vitaliano to discuss their proposed motion for summary judgment. (Id. ¶ 56). On March 6, 2013, Judge Vitaliano granted plaintiffs' request for permission to move for summary judgment and by September 11, 2013, the motion was fully briefed. (Id. ¶¶ 58, 61).

During the pendency of plaintiffs' motion for summary judgment, defendants served an offer of judgment, pursuant to Fed. R. Civ. P. 68, to the named plaintiffs and opt in plaintiffs to cover their FLSA minimum wage claims. (Id. ¶ 64). Defendants' offer accounted for full damages pursuant to the FLSA, including liquidated damages for all 89 opt in plaintiffs in the amount of $423,569.92. (See id.) Plaintiffs accepted this offer on March 12, 2014. (See id. ¶ 66). Thereafter, on April 16, 2014, after considering plaintiffs' acceptance of defendants' Rule 68 offer, Judge Vitaliano granted plaintiffs' motion for summary judgment as to the NYLL violations. (See id. ¶ 67). Judge Vitaliano held that defendants willfully: (1) violated the NYLL's minimum wage and overtime provisions; (2) violated plaintiffs' commission agreements; and (3) took unlawful deductions from plaintiffs' wages. (See Order[7] at 13; Fitapelli Decl. ¶ 67). Judge Vitaliano also found that defendants Bruce Bendell and Harold

---

[7]Citations to "Order" refer to Judge Vitaliano's Memorandum and Order granting plaintiffs' Motion for Summary Judgment, dated April 16, 2014.

Bendell were individually liable for Major World's NYLL violations. (Order at 12; Fitapelli Decl. ¶ 67).

Even though plaintiffs succeeded on their motion for summary judgment, defendants continued to litigate the case, and after several conferences before the undersigned, followed by several meet and confers, the parties agreed to proceed with a private mediation. (Fitapelli Decl. ¶¶ 68-69). On November 24, 2014, the second full day of mediation, the parties were able to reach a settlement in principle and executed a memorandum of understanding ("MOU"), which placed strict requirements on the parties with respect to the form, distribution, and calculation of individual settlement amounts. (Id. ¶¶ 74-76). In accordance with the MOU, on March 20, 2015, defendant issued checks to all plaintiffs in the total amount of $423,569.92, for the offer of judgment on plaintiffs' FLSA claims. (Id. ¶ 79). The parties continued to negotiate the terms of the settlement and by August 2015, the parties signed the Settlement Agreement. (Id. ¶ 80).

On August 21, 2015, plaintiffs submitted a Motion for Preliminary Approval of Settlement, Conditional of the Settlement Class, Appointment of Class Counsel as Class Counsel, and Approval of Plaintiffs' Proposed Notice of Settlement and Class Action Settlement Procedure ("Preliminary Approval Motion"). On September 1, 2015, Judge Vitaliano referred the Preliminary Approval Motion to the undersigned to issue a Report and Recommendation. (Id. ¶ 86). Thereafter, on December 22, 2015, the undersigned issued its Report and Recommendation that the Motion be approved, which was adopted in its entirety by Judge Vitaliano on January 26, 2016. (Id. ¶ 87). On February 1, 2016, the Court issued an Order setting deadlines for the administration of Notice to Class Members, which was distributed by first class mail by the Class Administrator on February 5, 2016 to 89 Class Members. (Id. ¶¶

88-89; Devery Decl.[8] ¶ 5). Plaintiffs provided an Excel spreadsheet, which listed all Class

Members and provided their mailing addresses. (Devery Decl. ¶ 4). For some Class Members,

there were multiple addresses listed; the Claims Administrator mailed the Notice and Claim to

all addresses provided in the Excel spreadsheet. (Id. ¶ 5). During the period from February 5,

2016 through April 5, 2016, one Notice was returned with a forwarding address and was re-

mailed, and four Notices were returned as undeliverable. (Id. ¶¶ 6-7). Of those four, the Claims

Administrator was able to obtain updated addresses through a skip trace and re-mailed the

Notices to 3 Class Members; only one was returned again. (Id. ¶ 8). A total of 81 claims were

filed with the Settlement Claims Administrator. (Id. ¶ 13). The Claims Administrator has not

received any requests from Class Members to be excluded from the settlement nor has any class

member objected to the settlement. (Id. ¶ 14).

Pursuant to the Settlement Agreement, the parties will create a settlement fund of

$5,500,000 (the "Settlement Fund") to resolve the remaining NYLL claims and cover court-

approved attorneys' fees and costs, service awards to plaintiffs, Claims Administrator's fees,

payroll taxes, and any costs and/or expenses arising out of or related to the litigation. (See

Fitapelli Decl. ¶¶ 81, 84; Set. Agr. § 1.23). The Settlement Fund is exclusive of the $423,569.92

previously paid for the FLSA damages. (Fitapelli Decl. ¶ 81). The Angeion Group will serve as

Claims Administrator and be responsible for calculating the amount to be paid to each class

member. (Fitapelli Decl. ¶ 84; Set. Agr. § 1.5). The Settlement allocation to Class Members

will be on a pro-rata basis based upon the number of vehicles sold by a Class Member during the

---

[8]Citations to "Devery Decl." refer to the Declaration of Claims Administrator Brian
Devery, which was attached as Exhibit B to the Fitapelli Declaration, dated April 6, 2016.

Class Period. (Fitapelli Decl. ¶ 84(1); Set. Agr. § 3.4). In that regard, defendants have provided plaintiffs' counsel with the number of vehicles sold by each Class Member, which numbers have been independently verified by an accountant. (Set. Agr. § 1.1). Based on the Claims Administrator's preliminary calculations, the highest estimated award to a class member is approximately $160,912.40, with each class member who submitted a claim receiving an average award of $39,693.19. (Devery Decl. ¶ 13).

The seven named plaintiffs have also applied for service awards of $20,000 each, in recognition of the services they rendered on behalf of the class over the past five and one half years ("Service Awards"). (See Fitapelli Decl. ¶¶ 98, 105; Set. Agr. § 3.3). Similarly, Class Counsel have applied for one third of the Settlement Fund in attorneys' fees, which amounts to $1,833,333.33, and reimbursement of a maximum of $21,892.41 in litigation costs and out of pocket expenses incurred by Class Counsel. (See Pls.' Mem. at 9-10; Set. Agr. §§ 3.1(A), 3.2(A)). Finally, the Claims Administrator will be paid $17,000 in fees out of the Settlement Fund. (Set. Agr. § 1.5).

Defendants are required to deposit $5,500,000 into the Settlement Fund within 15 calendar days after the date of this Order. (Settlement § 3.1(B)). If neither party seeks reconsideration of this Order, the "Effective Date" of the settlement will be 30 days after the Order is entered. (Id. § 1.13(B)(1)). Thereafter, within 10 calendar days after the Effective Date, the Claims Administrator will disburse settlement checks to Class Members, and pay attorneys' fees and costs, and service awards to the named plaintiffs. (Id. § 3.4(D)).

The parties now seek final approval of the proposed settlement as memorialized in the Settlement Agreement. The settlement is intended to encompass the claims of all Class

7

Members.

DISCUSSION

## I. **Final Approval of Class Settlement**

### A. Approval of the Rule 23 Class Settlement - Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure states, in relevant part, that "the claims [or] issues . . . of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). To grant such approval under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000); see Fed. R. Civ. P. 23(e). Judicial policy favors the settlement and compromise of class actions. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Whether a settlement is fair is a determination that falls within the sound discretion of the court. In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991); Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972).

Generally, approval of a class action settlement involves a two-step process: first, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement, Wal-Mart Stores. Inc. v. Visa U.S.A. Inc., 396 F.3d at 116; and, second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable." Capsolas v. Pasta Rest. Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

8

The Second Circuit has enumerated nine factors to guide courts in evaluating the substantive fairness of a proposed settlement:

> (1) [T]he complexity, expense[,] and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999).

The court must also determine if the settlement was "achieved through arm[']s-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 178 (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the Class Members' interests [were] represented adequately.'" Clement v. American Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37

9

(2d Cir. 1986)).

### 1. Approval of the Rule 23 Class Settlement - Analysis of Procedural Fairness

The parties represent that the proposed settlement was entered into after extensive arms-length negotiations between counsel, following the exchange of discovery, including the production of thousands of pages of documents, numerous depositions, and an onsite review of documents at defendants' offices. (Pls.' Mem. at 3; Fitapelli Decl. ¶¶ 20-21, 50-51). According to the parties, the settlement negotiations began in May 2012 when the parties requested that the Court issue a 60 day stay in order to allow the parties to discuss a possible settlement. (Fitapelli Decl. ¶ 51). After the parties failed to reach a settlement during the stay, the parties continued to engage in motion practice and discovery, resulting in plaintiffs succeeding on their motion for summary judgment. (Id. ¶¶ 53, 67). Defendants continued litigating the case, and after several meet and confers, the parties agreed to proceed with a private mediation. (Id. ¶ 68). The parties attended two full days of private mediation, one on August 5, 2014, and one on November 24, 2014, at which time the parties reached a settlement in principle. (Id. ¶¶ 71, 73-74). Additionally, since the settlement was agreed to in principle, the parties continued to engage in extensive negotiations on the terms of the agreement, finalizing the agreement in August 2015. (Id. ¶ 80). Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that there was procedural fairness in reaching the proposed settlement.

2. <u>Approval of the Rule 23 Class Settlement - Analysis of Substantive Fairness</u>

(a) <u>Complexity, Expense, and Likely Duration of the Litigation</u>

Turning to the <u>Grinnell</u> factors, the parties have already expended money and time in litigating this action for over 5 years, engaging in extensive discovery and motion practice. (Pls.' Mem. at 5). Although plaintiffs have successfully established liability on certain of their claims, the parties maintain that continuing the litigation further would cause the parties to expend substantial expenses and delay in an effort to prove damages. (<u>See</u> <u>id.</u>) This suggests that a trial in this case would be contested and would potentially be long and complicated.

Moreover, class actions, especially in the context of FLSA claims, are inherently complex. <u>See</u> <u>Tiro v. Public House Invs.</u>, Nos. 11 CV 7679, 11 CV 8249, 2013 WL 4830949, at *6 (S.D.N.Y. Sept. 10, 2013) (detailing the complexity and expenses involved in fully litigating FLSA class claims, and noting that the complexity is a factor in favor of settlement); <u>see also</u> <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), <u>aff'd</u>, 236 F.3d 78 (2d Cir. 2001).

In the absence of a settlement, further litigation in this case would clearly cause additional expense and delay, and could lead to a fact-intensive trial. (Pls.' Mem. at 5). A trial of this nature would be lengthy and consume tremendous time and resources since the 89 Class Members were responsible for hundreds of transactions during the Class Period. (<u>See</u> <u>id.</u>) The settlement, however, provides substantial monetary relief to the Class Members in a prompt and efficient manner. (<u>Id.</u>) Thus, this factor of potential protracted litigation favors settlement.

11

(b) <u>Reaction of Class to Settlement</u>

The reaction of Class Members to the settlement is the most significant factor in considering the fairness of the Settlement Agreement. <u>Chavarria v. New York Airport Serv., LLC</u>, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (citation omitted) (finding a positive class reaction when 91 claimants out of a possible 221 opted in to the suit and no possible claimants objected). At the fairness hearing held on April 22, 2016, no Class Members objected to the settlement and plaintiffs' counsel represented that the reaction of the Rule 23 Class has been positive. Further, notice was sent to 89 Class Members with information regarding the allocation formula and the process by which they could accept, opt out, or object to the settlement. (Notice[9] at 4-5). Class Members had until April 5, 2016 to submit objections or to opt out of the settlement. (<u>Id.</u> at 1). As of April 6, 2016, 81 of the 89 potential claimants had returned claim and release forms requesting settlement funds, which is approximately 96.35% of the eligible claimants. (Pls.' Mem. at 5; Devery Decl. ¶ 13). As Class Counsel notes, "Class Members have shown an enthusiastic response to the settlement." (Pls.' Mem. at 5). "[T]he fact that the vast majority of Class Members neither objected nor opted out is a strong indication of fairness." <u>Prasker v. Asia Five Eight LLC</u>, No. 08 CV 5811, 2010 WL 476009, at *4 (S.D.N.Y. Jan. 6, 2010) (quoting <u>Wright v. Stern</u>, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)) (approving settlement where there were no objections and only two opt outs). Therefore, the favorable response of the Class Members to the terms of the settlement weighs in favor of approving the Settlement Agreement.

---

[9]Citations to "Notice" refer to the Notice of Proposed Class Action Settlement, attached as Exhibit A to the Devery Declaration, dated April 6, 2016.

(c) Stage of Proceedings and Amount of Discovery Completed

At this point, the parties have conducted discovery for over five years and engaged in two mediation sessions, which has allowed the parties to assess the fairness and reasonableness of the proposed settlement in light of the relevant provisions of the FLSA and NYLL. (Pls.' Mem. at 6). Furthermore, plaintiffs have obtained thousands of pages of records from defendants, including deal folders, commission plans, collective bargaining agreements, auction receipts, class-wide wage and hour records, and commission data. (Fitapelli Decl. ¶¶ 11, 20-21, 34). When discovery has been extensive, and counsel has sufficient information to appreciate the merits of the case, then settlement is favored. Tiro v. Public House Invs., 2013 WL 4830949, at *7; In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537. Given the extent of discovery conducted in this case, the Court finds that this factor favors approval of the proposed settlement.

(d) Establishing Liability and Damages and
Maintaining the Action Through Trial

The risk of establishing liability also favors settling this dispute. Although plaintiffs were granted summary judgment on many of plaintiffs' claims, a trial on the remaining issues would involve significant risks for plaintiffs in proving damages. (Pls.' Mem. at 7). See also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 119 (finding that plaintiffs would have faced "significant challenges in proving damages," a factor favoring settlement); In re Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y. 1969) (holding that "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome"). Moreover,

plaintiffs would have to establish individual damages for each vehicle sold by the Class

Members, which would result in an extensive review.  (Pls.' Mem. at 7).  In response, if the case

were to proceed to trial, defendants would have argued that recovery on certain claims was

limited by a collective bargaining agreement – an argument which plaintiffs agree would require

significant factual development.  (Id.)  Thus, the proposed settlement eliminates many of these

issues as the Class Members will receive compensation for every vehicle they sold.

 In light of the foregoing, considering the risks of appeal and the prolonged and inherently

uncertain nature of litigation, the Court finds that this factor favors approval of the proposed

settlement.

### (e)  Ability of Defendants to Withstand Greater Judgment

 According to plaintiffs, the Settlement Agreement provides "substantial recovery" for

Class Members, even if defendants could withstand a greater judgment than the total amount for

which the case is settling.  (See Pls.' Mem. at 7).  However, this is not a significant factor in this

case because the remainder of the Grinnell factors favor approval of the settlement.  See City of

Detroit v. Grinnell Corp., 495 F.2d at 463.  See also D'Amato v. Deutsche Bank, 236 F.3d at 86

(noting that when all other Grinell factors favor settlement, the fact that defendant could

withstand a higher judgment does not, by itself, render a settlement unfair); Frank v. Eastman

Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (holding that this factor "standing alone,

does not suggest that the settlement is unfair").

14

(f) Range of Reasonableness of Settlement Fund

Class Counsel states that the settlement "provides much more than 'a fraction of the potential recovery.'" (Pls.' Mem. at 8). Nonetheless, there is no way to determine with certainty what amount of damages would be awarded in the event of a successful prosecution of the litigation. See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (holding that "[d]ollar amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case"); Republic Nat'l Life Ins. Co. v. Beasley, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) (citing Milstein v. Werner, 57 F.R.D. 515, 524 (S.D.N.Y. 1972)); Stull v. Baker, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (stating that the "[c]ourt is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion").

Where the settlement provides "a meaningful benefit" to the class, settlements have been found reasonable. In re Metlife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). If the proposed settlement provides a meaningful benefit to the Class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable. See In re Metlife Demutualization Litig., 689 F. Supp. 2d at 340.

Pursuant to the Settlement Agreement, Class Members will each receive their proportionate share of what remains after deducting from the $5,500,000 total award an award

15

for attorneys' fees and costs, service awards to the named plaintiffs, Claims Administrator's fees, and payroll taxes.  (See Pls.' Mem. at 8; Set. Agr. § 1.23).  Based on the Claims Administrator's calculations, Class Members will each receive an average net settlement payment of approximately $38,559.48, with the maximum award amount being $156,757.84. (Pls.' Mem. at 8; Devery Decl. ¶ 12).  The Settlement Fund does not include the $423,569.92 previously paid to all Class Members for their FLSA claims against defendants.  (Pls.' Mem. at 8).  The average award from the FLSA settlement amount was $4,983.18, with the highest award being $23,676.04.  (Fitapelli Decl. ¶ 65).  Class Counsel has not previously received any attorney's fees in connection with the FLSA payments.  (Pls.' Mem. at 9).

Courts have found settlement funds representing far less than the maximum possible recovery to be reasonable.  See In re Giant Interactive Grp., Inc., 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (finding settlement fund reasonable when it amounted to 16.5% of maximum possible recovery); Wright v. Stern, 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008) (finding a settlement fund that amounted to 40% of the maximum possible recovery); Cagan v. Anchor Savings Bank FSB, No. 88 CV 3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (finding a $2.3 million settlement fund reasonable when the maximum possible recovery was $121 million).

Where, as here, the proposed settlement provides a meaningful benefit to the Class Members, when considered against the obstacle of proving the Class Members' claims with respect to damages in particular, the Settlement Agreement is reasonable.  See In re Metlife Demutualization Litig., 689 F. Supp. 2d at 340.

16

(g) <u>Conclusion</u>

On the basis of the foregoing discussion of the Grinnell factors, the Court finds the terms of the proposed settlement for the Class Members to be fair and reasonable under the circumstances presented in this case. See City of Detroit v. Grinnell Corp., 495 F.2d at 463. Accordingly, the Court approves the settlement for the Class.

B. Approval of Class Representatives' Enhancement Awards

Pursuant to the Settlement, the Class Representatives, Mr. Karic, Mr. Garcia, Mr. Jones, Mr. Stanic, Mr. Zivanovic, Mr. Colon, and Mr. Chatman, will each receive a $20,000 enhancement award for their services to the litigation. (Pls.' Mem. at 22; Set. Agr. at § 3.4). "The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (quoting Parker v. Time Warner Entm't Co., 631 F. Supp. 2d 242, 279 (E.D.N.Y. 2009)) (internal quotation marks omitted). According to plaintiffs' counsel, the seven named plaintiffs made "significant contributions" to advance the prosecution and resolution of the lawsuit. (Pls.' Mem. at 22). They also took significant risk in pursuing the case; the named plaintiffs could have faced retaliation from defendants and/or be "black balled" from the industry. (Id. at 23). Although there has been no threat or indication of retaliation, courts have held that class representatives "merit recognition for assuming the risk of such for the sake of absent class members." Guippone v. BHS&B Holdings, Llc, No. 09 CV 1029, 2011 WL 5148650, at *20 (S.D.N.Y. Oct. 28, 2011); Parker v. Jekyll & Hyde Entm't Holdings, LLC, No 08 CV 7670, 2010 U.S. Dist.

17

LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) (holding that service awards "provide an incentive to seek enforcement of the law despite the dangers").

According to Class Counsel, the named plaintiffs contributed significant time and effort to the case. The named plaintiffs' services included, but were not limited to: "informing counsel of the facts initially and as the case progressed; providing counsel with relevant documents in their possession; reviewing defendants' document production; appearing for depositions; responding to defendants' discovery requests; assisting counsel to prepare for mediation[ ] and settlement discussions; and reviewing and commenting on the terms of the settlement." (Pls.' Mem. at 23; Fitapelli Decl. ¶¶ 98-105). See Parker v. Jekyll & Hyde Entm't Holdings, LLC, 2010 U.S. Dist. LEXIS 12762 at *4; Frank v. Eastman Kodak Co., 228 F.R.D. at 187. As a result of plaintiffs' efforts, six opt in plaintiffs joined the case prior to the Notice being issued. (Pls.' Mem. at 23; Fitapelli Decl. ¶ 101).

Having considered the involvement of the seven named plaintiffs with the discovery and settlement phases of this litigation, the Court finds that an enhancement award of $20,000 each is reasonable in light of the overall settlement. See Capsolas v. Pasta Resources Inc., No. 10 CV 5595, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving service awards of $20,000 and $10,000 for class representatives in wage and hour action); Willix v. Healthfirst, Inc., No. 07 CV 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards in wage and hour action of $30,000 and $15,000 to be reasonable); Mentor v. Imperial Parking Sys., Inc., No. 05 CV 7993, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (granting $40,000 and $15,000 service awards); Dornberger v. Metropolitan Life Ins. Co., 203 F.R.D. 118, 124 (S.D.N.Y. 2001) (approving an enhancement award of $10,000 in a $12 million settlement when

the class representative was deposed and was involved in settlement proceedings).

Accordingly, since the Court finds the enhancement awards to be fair and reasonable, the Court approves the enhancement awards to the named plaintiffs.


C. Approval of Attorneys' Fees and Costs

Class Counsel is requesting an award of $1,833,33.33 in fees, plus $21,892.41 in costs, professional fees, and expenses. This amount of fees represents 33.3% of the total amount of the Settlement Fund for attorneys' fees. (Pls.' Mem. at 9; Fitapelli Decl. ¶ 106). Further, taking into consideration the combined NYLL and FLSA settlements, Class Counsel's request represents 31% of the total $5,923,569.92 – $5,500,000 in the Settlement Fund to cover the NYLL claims and $423,569.92 Rule 68 offer of judgment previously paid to Class Members to resolve the FLSA claims. (Fitapelli Decl. ¶ 107). Defendants do not object to Class Counsel's application for attorneys' fees and costs, nor did any class member file an objection. (Pls.' Mem. at 9; Devery Decl. ¶ 14).

Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund. See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2008) (approving attorneys' fees of 33.3% of a $1.5 million settlement fund); In re Blech Secs. Litig., No. 94 CV 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (awarding attorneys' fees of 33.3% of settlement fund); see also Adair v. Bristol Tech. Sys., Inc., No. 97 CV 5874, 1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999); Klein v. PDG Remediation, Inc., No. 95 CV 4954, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999).

Moreover, in this case, Class Counsel expended significant time and effort in connection

with the litigation, resulting in a 2.05 times their current lodestar fee of $890,304.00, representing over 2,000 hours of attorney time, paralegal time, and time for other staff members over the course of 6 years.  (Fitapelli Decl. ¶ 110).  Moreover, as Counsel notes, this fee award also compensates counsel for time required to administer the Settlement Fund in the future, including answering class members' questions, questions from the Claims Administrator, and other tasks.  (See id. ¶ 129).  See also Beckman v. KeyBank, N.A., 293 F.R.D. 467, 482 (S.D.N.Y. 2013); McMahon v. Olivier Cheng Catering & Events, LLC, No. 08 CV 8713, 2010 U.S. Dist. LEXIS 18913, at *21 (S.D.N.Y. Mar. 3, 2010).  As such, the Court finds the fees requested by Class Counsel to be reasonable.  See Castagna v. Madison Square Garden, L.P., No. 09 CV 10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (awarding attorneys' fees to be paid out of the settlement fund resulting in a positive lodestar multiplier of 1.07); In re Lloyd's Am. Fund Litig., No. 96 CV 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (awarding attorneys' fees to be paid out of a settlement fund resulting in a positive lodestar multiplier of 2.09).

Class Counsel is also seeking litigation costs and expenses in the amount of $21,892.41 in addition to the request for attorneys' fees.  (Pls.' Mem. at 21-22).  "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses."  In re Marsh ERISA Litig, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (approving costs and expenses of $1,270,915.40); see also In re Vitamin C Antitrust Litig., 2012 WL 5289514, at *9 (approving attorneys' expenses of $2.5 million to be paid out of a settlement fund of $9.5 million); In re Veeco Instruments, Inc., No. 05 MDL 01695, 2007 WL 4115808, at *11 (S.D.N.Y. Nov. 7, 2007) (awarding over $700,000 in costs and expenses).  The costs and

expenses requested by Class Counsel represent court and process server fees, postage and courier fees, deposition costs, transportation, auditor fees, and mediation costs. (Fitapelli Decl. ¶ 134). The request for reimbursement is less than the $39,000 the Class Members were notified of in the Class Notice. (Set. Agr. § 3.2). Pursuant to the Settlement Agreement, the difference between $31,000 and $21,892.41 will be distributed to Class Members. (Fitapelli Decl. ¶ 134). Finally, neither the defendants, nor any Class Member, has objected to these costs. (Id. ¶ 108).

For these reasons, the Court finds these costs to be necessary and incidental to Class Counsel's representation of the Class and, therefore, finds such costs to be reasonable.


D.   Adequacy of Notice

Pursuant to the preliminary Order dated February 1, 2016, Notice was disseminated to all potential class members on February 5, 2016. (Fitapelli Decl. ¶¶ 88-89; Devery Decl. ¶ 5). The Notice provided the following information: (1) an explanation of who is entitled to a settlement award; (2) a brief contextual background to this lawsuit; (3) a summary of legal rights and options; (4) an explanation of the purpose of the Notice; (5) identifying information for Class Counsel; (6) an explanation of the benefits of settlement; (7) an overview of how each members' settlement amount will be calculated; (8) an overview of the process for obtaining a copy of the Settlement Agreement, which contains the allocation formula and other important information; (9) an overview of attorneys' fees, expenses, and the award that will be paid to the class representatives; (10) the result if the Court approves or does not approve the Settlement Agreement; (11) an explanation of the Fairness Hearing and the date, time, and place of the Hearing; (12) an overview of an individual's options regarding the Settlement Agreement; and

(13) additional contact information should a recipient of the notice have any questions.  (Devery Decl., Ex. B).

As the Court noted in its Report and Recommendation preliminarily approving the settlement, the Court found that the Notice and means of notification were sufficient.  (Report[10] at 24-26).  See also Weinberger v. Kenrick, 698 F.2d 61, 72 (2d Cir. 1982) (stating that mailing individual notices to class members at their last known addresses was a sufficient means of notification under the circumstances).  The Court also approved the other materials submitted by Class Counsel.  (Report at 26-27).  They include: class forms, a formula for settlement, and releases.  Given the detailed nature of these documents, along with the fact that defendants did not mount any opposition to them, the Court approved the class forms, the formula for settlement, and the releases submitted by plaintiffs.

## II. **Final Approval of the Rule 23 Class**

The parties also request that the Court grant final approval of the Rule 23 Class. (Settlement Decl. ¶ 3).  Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[10]Citations to "Report" refer to this Court's Report and Recommendation, dated December 22, 2015, and adopted by Judge Vitaliano in its entirety on January 26, 2016.

22

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, a plaintiff also must satisfy one of the three

subdivisions of Rule 23(b): (1) that separate actions pose a risk of inconsistent adjudications or

would substantially impair the ability of other individuals to protect their interests; (2) injunctive

or declaratory relief is sought concerning the class as a whole; or (3) common questions of law

or fact predominate over individual questions and a class action is superior to other methods for

bringing suit. Fed. R Civ. P. 23(b). See generally, Amchem Prods., Inc. v. Windsor, 521 U.S.

591 (1997). It is a plaintiff's burden to establish compliance with the requirements of Rule 23,

but in analyzing the issue of certification, the Court accepts as true the allegations in the

Complaint regarding the merits of plaintiff's claim. See Labbate-D'Alauro v. GC Servs. Ltd.

P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted).


A.  Rule 23(a) Requirements

1.  Numerosity

In this case, there appears to be no dispute that the numerosity requirement of Rule 23(a)

has been satisfied.  As noted, there are 89 Class Members (see Pls.' Mem. at 1), and factors such

as the inconvenience of trying individual actions, as well as the financial resources of potential

Class Members, weigh heavily in favor of a class action in this case. See Savino v. Comput.

Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998).

Moreover, the Second Circuit has noted that "numerosity is presumed at a level of 40 members."

Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert denied, 115

U.S. 2277 (1995); see also Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 48

(E.D.N.Y. 2010).  Accordingly, the Court finds that the requirement of numerosity has been satisfied.

### 2. Common Questions of Fact or Law

In determining whether plaintiffs can show that the claims of the potential Class Members share common questions of law or fact, the Rule does not require that "'all questions of law or fact raised be common.'" Savino v. Comput. Credit, Inc., 173 F.R.D. at 352 (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (holding that the claims need not be identical to satisfy the commonality requirement, but that they must share common questions of law or fact).  There must be a "unifying thread" among the claims to warrant class certification. Kamean v. Local 363, Int'l Bhd. of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  As long as "common questions . . . predominate," any differences in the circumstances raised by individual members will not defeat the requirement of commonality. In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged." Savino v. Comput. Credit, Inc., 173 F.R.D. at 352.

Here, there are several common legal and factual issues in this case.  Specifically, named plaintiffs and the Class Members all bring identical claims, alleging that defendants: (1) failed to pay plaintiffs and the Class Members in accordance with their commission agreements; (2) made unlawful deductions from plaintiffs' and Class Members' wages; and (3) failed to

24

maintain required records and pay proper wages.  As such, the Court finds that there are common issues sufficient to satisfy the requirements of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that plaintiffs' claims be typical of the claims of the Class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d at 936.  Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the Class Members' claims.  Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

Here, the claims of the seven Class representatives satisfy the typicality requirement because they were employed as car salesmen for defendants, and they were allegedly not compensated in accordance with the NYLL.  Irrespective of any differences in the amounts of overtime, wages or maintenance allowances owed, plaintiffs' claims and the claims of the Class Members all stem from defendants' alleged uniformly wrongful conduct; plaintiffs' claims are therefore sufficiently typical to warrant certification.

### 4. Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test.  In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992).  First, there must be a showing that Class Counsel is

"'qualified, experienced and generally able' to conduct the litigation." <u>Halford v. Goodyear Tire & Rubber Co.</u>, 161 F.R.D. at 19 (quoting <u>Eisen v. Carlisle & Jacquelin</u>, 391 F.2d 555, 562 (2d Cir. 1968), <u>vacated on other grounds</u>, 417 U.S. 156 (1974)).  Second, the Class Members' interests may not be "'antagonistic'" to one another.  <u>County of Suffolk v. Long Island Lighting Co.</u>, 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), <u>aff'd</u>, 907 F.2d 1295 (2d Cir. 1990).

Here, Class Counsel claim to have extensive experience in prosecuting wage and hour class actions, and they have been appointed and certified as counsel in several certified collective actions. (Fitapelli Decl. ¶¶ 111-12).  Indeed, Class Counsel claim that they have demonstrated their ability to prosecute this case diligently and to represent the interests of the potential Class Members in that they have done substantial work identifying, investigating, prosecuting, and settling the claims over the past four years.  (<u>Id.</u>)

Class Counsel also represent that neither the plaintiffs nor Class Counsel have any conflict of interest with the Class Members.  (<u>Id.</u> ¶ 105).  In order for a potential or actual conflict to defeat certification, it "must be fundamental." <u>In re Flag Telecom Holdings, Ltd. Secs. Litig.</u>, 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations omitted).  Based on the nature of the plaintiffs' claims and on the representation that no conflict of interest exists, the Court finds that plaintiffs' claims are so interrelated with those of the Class Members that plaintiffs are adequate Class representatives.

26

B. The Requirements of Rule 23(b)(3)

1. Common Questions Predominate Over Individual Issues

Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class. Amchem Prods. Inc. v. Windsor, 521 U.S. at 623. Courts focus on whether there are common questions related to liability. See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007). Cases involving claims of unpaid wages have been found to be "about the most perfect question for class treatment." Id. at 373. Even if there are defenses that affect Class Members differently, that alone "does not compel a finding that individual issues predominate over common ones." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24 (2d Cir. 2006).

In this case, plaintiffs allege that the Class Members were governed by the same pay policies and procedures, and that these common issues predominate over those affecting any one individual. Thus, the Court finds that common questions predominate in this case.

2. Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal

27

quotation marks omitted).  The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(2)] the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; [(3)] the desirability or undesirability
> of concentrating the litigation of the claims in the particular
> forum; and [(4)] the likely difficulties in managing a class action.

In this case, plaintiffs claim that proceeding as a class action will achieve economies of
scale for the Class Members and preserve judicial resources by consolidating common issues of
fact and law, with the result of preserving public confidence in the system by avoiding
inconsistent adjudications.  Furthermore, in this case, there is no indication that the Class
Members desire to control their own cases.  As a result, the Court approves the Rule 23 Class.

In light of the foregoing, the Court finds that plaintiffs have satisfied the requirements of
Rule 23(b)(3).  Pursuant to that provision, the Court certifies the Class Members as a class for
settlement purposes only, consisting of all persons who were employed by Major World car
dealerships as sales representatives at any time between December 30, 2003 through November
24, 2014.

## CONCLUSION

For the foregoing reasons the Court Orders that: (1) the Settlement Agreement and
Release that applies to the 89 individuals that opted into the action is approved; (2) the Class
Representatives' enhancement awards of $20,000 each is approved; (3) Class Counsel's request
for attorneys' fees, costs, and expenses is approved; (4) final certification is granted to the Class
Members – namely, the 89 individuals that opted into the action under Federal Rules of Civil

28

Procedure 23(a) and (b)(3) – for purposes of effectuating the settlement; and (5) plaintiffs' proposed final settlement procedure is approved.  Pursuant to the Settlement Agreement, defendants are required to deposit $5,500,000 into the Settlement Fund within 15 calendar days after the date of this Order, by May 12, 2016.  If neither party seeks reconsideration of this Order, the "Effective Date" of the settlement will be 30 days after the Order is entered, May 27, 2016.  Thereafter, within 10 calendar days after the Effective Date, by June 6, 2016, the Claims Administrator will disburse settlement checks to Class Members, and pay attorneys' fees and costs, and service awards to the named plaintiffs.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
April 27, 2016

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

29